## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEVIN T. BESSE**                                              **CIVIL ACTION**

**VERSUS**                                                     **NO.  16-2992**

**ROBERT C. TANNER, WARDEN**                                   **SECTION "G"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Kevin T. Besse, is incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2]  On January 15, 2010, Besse was charged by bill of information in Jefferson Parish with two counts of unauthorized entry into an inhabited

_____

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

dwelling.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts determined

at trial as follows:

> Anastasia Rey ("Rey"), William James ("James"), and Besse met each other while they were patients at River Oaks Hospital undergoing substance abuse treatment. When Rey, age 29, and James, an elderly gentleman, were released from River Oaks, they decided to rent a duplex together at 546 Orion in Jefferson Parish. Besse was released shortly thereafter and contacted Rey. He and Rey had a brief romantic relationship. During that time, Besse stayed with Rey overnight at her house on Orion, but he never moved into that house.

> Rey testified that she did not like Besse's possessive and controlling behavior, so she ended their relationship and asked Besse to leave the house. Besse refused to leave the home, so Rey left with James and instructed Besse to get his clothing and other belongings and leave her house by the time she returned. Rey and James left and drove around the neighborhood. They both agreed that Besse was "shady" and should not be in their house. While they were talking, Rey noticed that James' cell phone was on and that Besse was listening to everything they were saying.

> Rey and James went to a bar near their house called "Mama's Place" to give Besse time to leave the house. While she was playing video poker, James was sitting next to her drinking. At some point, Besse walked into the bar and punched James in the face. The bartender told Besse to leave, which he ultimately did, and the bartender called the police.

> When Deputy Jason Melito of the Jefferson Parish Sheriff's Office arrived, he asked James if he wanted to press charges, but James declined to do so. At that point, Besse called Rey's cell phone. Deputy Melito got on the cell phone and told Besse that Rey did not want anything to do with him, and if Besse was found at her house, he would go to jail.

> After the officer left, Rey and James went home. James, who was drunk, stayed outside in the car and smoked cigarettes. Rey walked inside the house to change clothes. She went into her bedroom, turned on the television, and sat on the futon to watch it. Suddenly, Rey saw Besse standing in the doorway. Besse told Rey she was going to talk to him now. Rey "freaked out" and tried to go to the door, but, when she reached for it, Besse grabbed her and started wrestling with her. Besse was choking her, and they struggled all the way to the front room. Besse had his arm around her throat starting to cut off the air.

> Rey said to Besse, "You're going to kill me," and he replied, "Yeah, I'm going to f...cking kill you." She kept trying to open the [front] door with her arms and legs, because she thought Besse would kill her if the door closed. Rey, who was screaming, was able to get out of the house. She opened the passenger side door of her car and screamed for James to help her; however, James was "out of it." At that

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 1/15/10 (as amended 9/14/10).

point, Besse jumped in the front seat, and Rey took off running. Her cell phone was not working so she ran to Mama's Place and asked the bartender to call the police, which she did.

Rey was shaken up, her shirt was ripped, she was barefoot, and her pants were covered in grass. She was sore all over her body, and she had fingerprints around her neck and a bruise on her leg. Deputy Melito responded to the call at Mama's Place, and he and Rey drove back to the house.

Other officers, who were already there, had searched the interior of the house, but they could not find anyone there. At that time, Rey told the officers to check the passenger side door of her car for James. They found James slumped over and unconscious. His face was beaten and "unrecognizable." He had a severe laceration to his right eye, and severe swelling to his face and left eye. An ambulance was called, and James was taken to the hospital.

Meanwhile, Rey followed the detective in her car to the bureau and gave a statement. Afterward, Rey went back home. At Deputy Melito's suggestion, Rey called 911 to ask them to send an officer to her house to walk through it with her before she entered the house. While Rey was waiting for the officer to arrive, she noticed that Besse had sent her several text messages, which were: (1) "I was not going to hurt you. I do love you. Sorry. I just want to talk and be friends;" (2) "From Kevin, James attacked me in the car;" (3) "Please call me!;" (4) "Do you know he was drinking? I bet not;" and (5) "I will not ever hurt you, and I did not. I just want to talk. Please forgive me."

Deputy Carey Dials eventually arrived at the house, and Rey showed her the text messages from Besse. Afterward, Rey and Deputy Dials went inside the house. Rey went into a spare room and opened the closet. When she did so, the equipment began moving and Besse jumped out. Rey screamed, alerting Deputy Dials who came in and handcuffed Besse. Besse identified himself to the officer as "Steven." The deputies noticed that Besse had a severe laceration on the knuckle of his right hand. When Deputy Melito asked Besse for his address, Besse said he had lived at the Orion house for a week, but his current address where he had lived for the longest time was 2429 Idaho Street in Kenner.

(footnote omitted) <u>State v. Besse</u>, 83 So.3d 257, 260-62 (La. App. 5th Cir. 2011); State Record Volume 3 of 6, Louisiana Fifth Circuit Opinion, 11-KA-230, pages 3-6, December 28, 2011.

Besse was tried before a jury on September 14, 2010, and found guilty on count one of the lesser offense of criminal trespass and guilty as charged on count two of

unauthorized entry of an inhabited dwelling.[4]  On September 23, 2010, the state trial court sentenced Besse to serve thirty days in parish prison for criminal trespass and six years in prison at hard labor for unauthorized entry of an inhabited dwelling.[5]

The state filed a multiple bill charging Besse as a fourth felony offender.[6]  The trial court held a hearing on November 10, 2010, after which it found that Besse was a multiple offender.[7]  The court resentenced Besse as a multiple offender to serve thirty (30) years in prison at hard labor.[8]

On direct appeal to the Louisiana Fifth Circuit, Besse's appointed appellate counsel asserted that the state trial court erred in adjudicating Besse a fourth felony offender and imposed an excessive sentence.[9]  In a pro se supplemental brief, Besse asserted two errors:[10] (1) The evidence was insufficient to support the verdict of unauthorized entry into an inhabited dwelling. (2) The petitioner was prejudice by the introduction of other crimes evidence.

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/10; Jury Verdict, 9/14/10; St. Rec. Vol. 3 of 6, Trial Transcript, 9/14/10.

[5]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/23/10; 3 of 6, Sentencing Transcript, 9/23/10.

[6]St. Rec. Vol. 1 of 6, Multiple Bill, 9/24/10.

[7]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 11/10/10; see also, Hearing Minutes, 9/30/10; St. Rec. Vol. 3 of 6, Multiple Bill Hearing Transcript, 11/10/10.

[8]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 11/10/10; St. Rec. Vol. 3 of 6, Multiple Bill Hearing Transcript, 11/10/10.

[9]St. Rec. Vol. 3 of 6, Appeal Brief, 11-KA-230, 3/28/11.

[10]St. Rec. Vol. 3 of 6, Pro Se Brief, 11-KA-230, 5/3/11.

4

On December 28, 2011, the Louisiana Fifth Circuit affirmed Besse's convictions finding no merit in his pro se claims.[11] However, the court found merit in the claim that the evidence was insufficient to support the multiple offender adjudication and addressed numerous other errors in the multiple offender proceeding. The court vacated the multiple offender adjudication, rendering moot the issue of excessive sentence. The court remanded the matter to the trial court for further proceedings.

On May 25, 2012, the Louisiana Supreme Court denied without stated reasons Besse's writ application based on sufficiency of the evidence and admissibility of the other crimes evidence challenging the Fifth Circuit's affirming his conviction.[12]

In the meantime, on remand of the habitual offender proceeding, the State re-filed the multiple bill to which Besse pled not guilty.[13] At a hearing held on May 24, 2012, the state trial court again adjudicated Besse a fourth felony offender.[14] The court vacated the original sentence on count two and sentenced Besse as a fourth felony offender to

---

[11]Besse, 83 So.3d at 257; St. Rec. Vol. 3 of 6, 5th Cir. Opinion, 11-KA-230, 12/28/11.

[12]State v. Besse, 90 So.3d 409 (La. 2012); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2012-KO-0292, 5/25/12; La. S. Ct. Writ Application, 12-KO-0292, 1/27/12; St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2012-KO-292, 1/27/12.

[13]St. Rec. Vol. 1 of 6, Multiple Bill, 1/6/12; Minute Entry, 2/9/12.

[14]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 5/24/12; see also, Response to Multiple Bill, 2/23/12; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/24/12.

serve thirty (30) years in prison at hard labor without benefit of probation or suspension of sentence.[15]  The court also denied both of Besse's motions to reconsider the sentence.[16]

Besse initially filed an appeal from the multiple offender adjudication, but the matter was voluntarily dismissed by order of the Louisiana Fifth Circuit on January 31, 2013.[17]  Under Louisiana law, the voluntary dismissal of a criminal appeal "'has all the effect of an affirmance of the conviction and sentence.'"  State v. Perkins, 988 So.2d 793, 799 (La. App. 4th Cir. 2008) (quoting City of Shreveport v. Jones, 172 La. 833, 135 So. 373, 374 (La. 1931)); see also, Watson-Buisson v. Cain, 2015 WL 12434469, at *3 (E.D. La. Nov. 4, 2015), report and recommendation adopted by 2016 WL 4592182, at *4 (E.D. La. Sep. 1, 2016).  As a result, under federal law, Besse's convictions and sentences became final thirty (30) days later, on Monday, March 4, 2013,[18] when he did not seek review in the Louisiana Supreme Court.  See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case,

---

[15]St. Rec. Vol. 1 of 6, Sentencing Minutes, 5/24/12; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/24/12.

[16]St. Rec. Vol. 1 of 6, Trial Court Order, undated; Motion for Reconsideration of Sentence, 5/30/12; Trial Court Order, 7/24/12; Motion to Reconsider Sentence, 6/19/12.

[17]St. Rec. Vol. 4 of 6, 5th Cir. Order, 12-KA-0779, 1/31/13; Motion to Dismiss, 12-KA-0779, 1/30/13.

[18]The thirtieth day was Saturday, March 2, 2013, leaving the final day of the period to fall to the next business day, Monday, March 4, 2013. Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

On December 29, 2013, Besse signed and submitted his first application for post-conviction relief in which he asserted the following grounds for relief:[19] (1)(a) ineffective assistance of counsel when counsel failed to subpoena witnesses from the list provided to him and request Rule 404(B) evidence in advance, and (b) petitioner wanted to fire counsel before trial started, but the request was denied by the state trial court; (2) conflict of interest - fiduciary contract, because counsel was friends with the victim's uncle, a prominent attorney with influence in the 24th Judicial District; (3) unlawful charge and conviction based on the victim's conflicting statements about whether petitioner lived at the apartment; (4) State misconduct during Rule 404(B) introduction of res gestae evidence that petitioner beat William James when there were no witnesses to support the statement; (5) although there was medical evidence of petitioner's psychiatric problems and the state trial court denied his request for a continuance to get his medication balanced, he was not allowed to mention his mental health during trial; (6) excessive sentence because mitigating circumstances would show that he was not on needed

---

[19] St. Rec. Vol. 1 of 6, Application for Post-Conviction Relief, 1/6/14 (dated 12/29/13).

medication and had relapsed to drugs and alcohol when the crime occurred, and his rehabilitation efforts in prison should have been considered in his sentencing.

On May 12, 2014, after receiving additional briefing from the parties,[20] the state trial court denied Besse's post-conviction application, finding that claims one and two and the related supplemental arguments were meritless.[21]  The court also concluded that claims two, three and five and the related supplemental arguments were procedurally barred from review under La. Code Crim. P. art. 930.4, because the claims could have been and were not raised on direct appeal.  Claim four and the related supplemental arguments were also found to be procedurally barred from review as repetitive under La. Code Crim. P. art. 930.4(C), because the other crimes evidence issue was fully litigated on appeal.  Finally, the state trial court found that claim six was a sentencing issue not cognizable on post-conviction review under La. Code Crim. P. art. 930.3.

The Louisiana Fifth Circuit denied Besse's related writ application on August 19, 2014, finding no error in the state trial court's denial of relief based on the same reasons presented by the state trial court.[22]  The appellate court also noted that Besse filed two supplements to his writ application regarding the introduction of photographs at trial and

---

[20]St. Rec. Vol. 1 of 6, State's Response, 3/13/14; Addendum to Post-Conviction Relief, 3/27/14 (dated 3/21/14).

[21]St. Rec. Vol. 1 of 6, Trial Court Order, 5/12/14.

[22]St. Rec. Vol. 2 of 6, 5th Cir. Order, 14-KH-414, 8/19/14; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 14-KH-414, 6/2/14 (dated 5/28/14).

the claims had not been first presented to the state trial court.[23]  The court declined to

consider those supplemental claims for that reason.  Besse did not seek review of this

ruling in the Louisiana Supreme Court.

Shortly thereafter, on August 25, 2014, Besse signed and submitted to the state

trial court a second application for post-conviction relief in which he sought to re-urge

and "bolster" his claim of ineffective assistance of trial counsel by asserting the

following grounds:[24] (1) Trial counsel failed to (a) file pretrial discovery, (b) interview

witnesses, (c) file motions to suppress evidence including the prejudicial photographs,

(d) file a motion in limine challenging the admissibility of the photographs, (e) file a

motion to quash the repetitive subpoenas issued by the State to the victim to coerce her

into testifying, (f) question why there was no preliminary hearing which would have

cleared him of the charges, (g) inform the state trial court about his conflict of interest,

mention the petitioner's mental health issues and timely request a sanity hearing, (h)

subpoena the witnesses provided to him by petitioner, (i) object to the State's

misrepresentation of plea negotiations and the State's ability to prove its case which

prejudiced petitioner's choice to go to trial, (j) object to the State's amendment to the bill

---

[23]St. Rec. Vol. 5 of 6, Supplement, 14-KH-414, 6/23/14; Addendum, 14-KH-414, 6/18/14. Specifically, Besse asserted that trial counsel was ineffective for failure to include in his objection that the photographs of James's injuries violated the confrontation clause in addition to the other crimes component. St. Rec. Vol. 5 of 6, Supplement, 14-KH-414, 6/23/14. In his other supplement, he argued that the state trial court erred in failing to allow the jury to review the trial exhibits during their deliberations. St. Rec. Vol. 5 of 6, Addendum, 14-KH-414, 6/18/14.

[24]St. Rec. Vol. 2 of 6, Application for Post-Conviction Relief, 9/2/14 (dated 8/25/14).

of information to add two counts of home invasion to the two counts of unauthorized entry, and insist that petitioner be arraigned on the amended bill, (k) object to the State's opening statement referencing the attack on William James, (l) object to the jury reviewing the evidence during deliberations, (m) include a confrontation clause and hearsay element to his objection to the photographs of James. (2) Petitioner's request to fire his counsel was denied by the state trial court, which left him with no defense for trial.

The state trial court denied the application on September 16, 2014, on grounds that it sought untimely post-conviction review under La. Code Crim. P. art. 930.8 and was successive.[25]  Besse submitted an addendum to his petition on September 21, 2014, asserting that his counsel was ineffective for failure to object on hearsay grounds to Deputy Melito's testimony about the cause of James's injuries.[26]  The state trial court declined to address the merits of the claim as untimely under La. Code Crim. P. art. 930.8.[27]

On November 4, 2014, the Louisiana Fifth Circuit denied Besse's related writ application finding no error in the trial court's September 16 and 21, 2014, orders

---

[25]St. Rec. Vol. 2 of 6, Trial Court Order, 9/16/14.

[26]St. Rec. Vol. 2 of 6, Addendum to Second Post-Conviction, 9/24/14 (dated 9/21/14).

[27]St. Rec. Vol. 2 of 6, Trial Court Order, 9/30/14.

denying relief under La. Code Crim. P. art. 930.8.[28]  Besse then submitted two writ applications to the Louisiana Supreme Court, Writ Nos. 14-KH-2636 and 15-KH-20, challenging these rulings by the state trial court and the Louisiana Fifth Circuit.[29]

While these writ applications were pending, on December 3, 2014, Besse signed and submitted to the trial court a motion to vacate the mandatory minimum habitual offender sentence and a motion to correct his sentence on other grounds.[30]  The state trial court denied both motions as meritless by separate orders issued on January 5, 2015.[31]

In the meantime, Besse also submitted a motion for a new trial in the state trial court on December 23, 2014, based on his alleged discovery of a lease agreement.[32]  The state trial court denied the motion on January 14, 2015.[33]  Almost eight months later, on August 3, 2015, he filed another motion for new trial asserting numerous grounds for

---

[28]St. Rec. Vol. 5 of 6, 5th Cir. Order, 14-KH-776, 11/4/14; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 14-KH-776, 10/7/14 (dated 9/28/12).

[29]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 14-KH-2636, 12/17/14 (dated 12/8/14); La. S. Ct. Writ Application, 15-KH-20, 1/6/15 (postal metered 12/22/15); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2014-KH-2636, 12/18/14; La. S. Ct. Letter, 2015-KH-20, 1/6/15.

[30]St. Rec. Vol. 2 of 6, Motion to Correct Illegal Sentence, 12/8/14 (dated 12/3/14); Motion to Vacate Mandatory Minimum Sentence, 12/9/14 (date 12/3/14).

[31]St. Rec. Vol. 2 of 6, Trial Court Order, 1/5/15; Trial Court Order (2), 1/5/15.

[32]St. Rec. Vol. 2 of 6, Motion for New Trial, 12/23/14.

[33]St. Rec. Vol. 2 of 6, Trial Court Order, 1/14/15.

relief.[34]  The state trial court denied the motion.[35]  On October 6, 2015, the state trial court reissued its orders of January 14 and August 20, 2015, denying Besse's motions for new trial.[36]  On December 4, 2015, the Louisiana Fifth Circuit denied relief on review of the August 20, 2015, ruling, finding that the motion for new trial was not timely filed.[37] By this time, Besse had submitted a writ application directly to the Louisiana Fifth Circuit which that court denied on October 21, 2015, because Besse had not first asserted the issues and sought relief in the state trial court.[38]

On October 23, 2015, Besse signed and submitted to the state trial court motions to correct his sentence and quash the bill of information.[39]  By separate orders issued on November 17, 2015, the court denied the motion to correct as meritless and the motion to quash as untimely.[40]  The Louisiana Fifth Circuit denied his related writ application on February 22, 2016, finding that his motion was untimely and sought relief from the multiple offender adjudication that was not cognizable on post-conviction review under

---

[34]St. Rec. Vol. 2 of 6, Motion for New Trial, 8/3/15.

[35]St. Rec. Vol. 2 of 6, Trial Court Order, 8/20/15.

[36]St. Rec. Vol. 2 of 6, Trial Court Order, 10/6/15.

[37]St. Rec. Vol. 5 of 6, 5th Cir. Order, 15-KH-652, 12/4/15; 5th Cir. Writ Application, 10/19/15 (dated 10/9/15).

[38]St. Rec. Vol. 2 of 6, 5th Cir. Order, 15-KH-579, 10/21/15; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 15-KH-579, 9/18/15 (dated 9/2/15).

[39]St. Rec. Vol. 2 of 6, Motion to Correct Illegal Sentence, 10/28/15 (dated 10/23/15); Motion to Quash Bill of Information, 10/28/15.

[40]St. Rec. Vol. 2 of 6, Trial Court Order, 11/17/15; Trial Court Order (2), 11/17/15.

La. Code Crim. P. art 930.3.[41]  On March 8, 2016, the Louisiana Fifth Circuit also denied as repetitive another of Besse's writ applications in which he sought to have his second multiple offender adjudication vacated.[42]

In the meantime, on February 26, 2016, the Louisiana Supreme Court addressed and denied Besse's writ application No. 14-KH-2636 finding that, while his second application for post-conviction relief was <u>not</u> untimely under La. Code Crim. P. art. 930.8, it was repetitive under La. Code Crim. P. art. 930.4.[43]  In response to the court's mandate, on March 8, 2016, the state trial court entered a ruling denying Besse's second application for post-conviction relief as repetitive.[44]  A few weeks later, on March 14, 2016, the Louisiana Supreme Court also declined to consider Besse's writ application No. 15-KH-20, finding that it was untimely under La. S. Ct. Rule X§5.[45]  That same day, the state trial court addressed Besse's application for writ of habeas corpus and motion for a temporary restraining order filed on March 8, 2016, which it construed as applications for post-conviction relief, and denied them for seeking untimely post-

---

[41]St. Rec. Vol. 2 of 6, 5th Cir. Order, 15-KH-779, 2/22/16; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 15-KH-779, dated 12/7/15.

[42]St. Rec. Vol. 5 of 6, 5th Cir. Order, 15-KH-782, 3/8/16; 5th Cir. Writ Application, 15-KH-782, 12/11/15 (dated 12/8/15).

[43]State ex rel. Besse v. State, 184 So.3d 1272 (La. 2016); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2014-KH-2636, 2/26/16.

[44]St. Rec. Vol. 2 of 6, Minute Entry, 3/8/16.

[45]State ex rel. Besse v. State, 186 So.3d 648 (La. 2016); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2015-KH-0020, 3/14/16.

conviction relief under La. Code Crim. P. art. 930.8.[46]  The record does not reflect that

Besse sought review of this ruling.

## II.    FEDERAL HABEAS PETITION

On April 11, 2016, the clerk of this court filed Besse's federal habeas corpus

petition in which he asserts that he recieved ineffective assistance of counsel because his

trial counsel failed to (1) file pretrial discovery, (2) file a motion to suppress the

prejudicial photographs or any other pretrial motion to suppress, (3) file a motion in

limine regarding admissibility of prejudicial photographs, (4) file a motion to quash

repetitive subpoenas by the State, (5) file a motion for preliminary hearing, (6) inform

the court of his conflict of interest, (7) file a motion for a sanity hearing before trial, (8)

assist petitioner with compulsory process by subpoenaing witnesses, (9) prepare a

defense which is why petitioner wanted to fire him, (10) object to the State's

misrepresentation of plea negotiations, (11) object to the State's constructive amendment

to the bill of information, (12) object to the prosecutor's improper opening statements

referencing the attack on James, (13) object to the jury being allowed to review the

photographic evidence during deliberations, (14) object to the photographic evidence on

the grounds of hearsay in violation of the confrontation clause, (15) research the case

because of his travel to Arkansas, (16) move for a Prieur hearing before the photographs

_____

[46]St. Rec. Vol. 2 of 6, Trial Court Order, 3/14/16; Application for Writ of Habeas Corpus, 3/8/16; Motion for TRO and Preliminary Injunction, 3/8/16.

were admitted, (17) file for a bill of particulars, (18) file an omnibus motion, . . . and (20) make opening statements or closing arguments.[47]  He also alleged as claim 19 that the state trial court denied his three post-conviction motions in violation of due process.

The State filed a response in opposition to Besse's petition asserting that he failed to exhaust state court review of two claims and that the remaining claims are procedurally barred from federal habeas review.[48]

In his reply to the State's response, Besse contends that the Louisiana Supreme Court did not invoke a procedural bar but instead found his post-conviction application to have been timely.[49]  In addition, Besse asserts that, as cause for any procedural default, he was housed in a facility that did not have an adequate law library or provide inmate counsel to assist him.  He also contends that he can show his factual innocence because he received ineffective assistance of counsel at trial and he was denied a post-conviction hearing in the state courts, and that he could show prejudice in that the State withheld Brady material, i.e. the lease agreement, and allowed the victim to give prejudicial testimony.

Besse also asserts that claim 18 was intended to establish that there were many motions that his counsel could have filed, although he does not specify any in the reply.

---

[47]Rec. Doc. No. 1.

[48]Rec. Doc. No. 20.

[49]Rec. Doc. No. 21.

He also contends that claim 19 was not intended as a ground to support the ineffective assistance of counsel claim and instead was included to show that he tried to get conflict-free and effective counsel before trial. Besse therefore asks that the court consider sufficient his clarification of these two claims or dismiss them.

III.     GENERAL STANDARDS OF REVIEW

     The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[50] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Besse's petition, which, for reasons discussed below, is deemed filed in federal court on April 6, 2016.[51] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated

---

[50]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[51]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court filed Besse's petition on April 11, 2016, and he was later granted pauper status. Besse dated the signature on his petition on April 6, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.

on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Although not addressed by the State, I find that Besse's federal petition is timely. The State has asserted the defenses of failure to exhaust and procedural default based on the presentation and disposition of his claims in the state courts. I find that, although state court review of some of Besse's claims was not completed in a procedurally proper manner, all of his claims are procedurally barred from federal habeas review.

## IV.    EXHAUSTION DOCTRINE AND PROCEDURAL DEFAULT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 177-79.

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of his claims in the state courts, Besse must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner. In this case, the State concedes and I find that Besse has exhausted state court review of some of his claims. However, for the reasons that follow, Besse has defaulted any remaining review of his claims and his claims are considered technically exhausted.

Besse has asserted twenty (20) grounds for relief related to his claim of ineffective assistance of trial counsel. The State asserts that Besse failed to present one ground, No.

18 (counsel's failure to file omnibus motions) to any state court.  The State also contends that Besse only presented his argument that the state trial court erred in denying his post-conviction motions (No. 19) to the Louisiana Supreme Court.  Having reviewed Besse's applications for post-conviction relief and his multiple writ applications filed in the Louisiana Fifth Circuit and Louisiana Supreme Court, I find that Besse failed to exhaust review of seven of his claims in a procedurally proper manner.

To the extent this exceeds the defense asserted by the State, I raise the issue of exhaustion in part sua sponte.  Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is addressing the issue of failure to exhaust state court remedies and that petitioner must submit any evidence or argument concerning exhaustion as part of any objections he may file to this report**.  See Kurtzemann v. Quarterman, 306 F. App'x 205, 206 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing Day v. McDonough, 547 U.S. 198, 209-10 (2006) (addressing limitations) and Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

As an initial matter, and contrary to the State's arguments, the record reflects that Besse sought review of claim number 19 in the state courts, although it was not done in a procedurally proper manner.  In this claim, Besse asserts that the state trial court denied him due process when it denied his three post-conviction motions to obtain supporting

documentation.  Besse included this issue along with his initial post-conviction claims in the Louisiana Fifth Circuit in Writ No. 14-KH-414, which was denied by that court on August 25, 2014.  Although he did not seek review of that particular ruling, he asserted the same issue along with his second round of post-conviction claims in his later writ application, No. 14-KH-2636, before the Louisiana Supreme Court.  His sequence of review does not follow the pattern or timeliness required under Louisiana law.[52]

Two other grounds, No. 8 (failure to assist with compulsory process) and No. 9 (failure to prepare a defense) were initially raised by Besse in his first application for post-conviction relief, and were denied as meritless.  He sought review of the state trial court's order in the Louisiana Fifth Circuit in Writ No. 14-KH-414, and that writ application approved the denial on the merits.  Besse did not seek review of that ruling in the Louisiana Supreme Court.  Instead, he eventually presented the claims to the Louisiana Supreme Court in Writ No. 14-KH-2636, and that writ application was denied for seeking repetitive post-conviction relief.  This sequence of review also does not follow the pattern or timeliness required under Louisiana law.

I also find that three other claims were presented to the state trial court and the Louisiana Supreme Court, but were not presented to the Louisiana Fifth Circuit, and

---

[52]Louisiana law requires that a post-conviction claim must be brought in an application for post-conviction relief filed in the state district court. La. Code Crim. P. arts. 925 and 930.3. The petitioner may then seek supervisory review in the appellate court, La. Code Crim. P. art. 930.6, within thirty days of the trial court's ruling, La. App. R. 4-3. Following this, the petitioner can seek discretionary review within thirty days in the Louisiana Supreme Court, La. S. Ct. Rule X§5.

therefore were not exhausted in a procedurally proper manner.  These claims are No. 16 (failure to move for a <u>Prieur</u> hearing), No. 17 (failure to file a bill of particulars), No. 18 (failure to file omnibus motions) and No. 20 (failure to make opening statements or closing arguments).  Thus, Besse has presented seven grounds, Nos. 8, 9, 16, 17, 18, 19 and 20, which were not exhausted through each level of the state courts in a procedurally proper manner.

Nevertheless, there is no doubt that all twenty (20) of Besse's grounds in support of his ineffective assistance of counsel claim were presented to the Louisiana Supreme Court in Writ No. 14-KH-2636, which the court ultimately dismissed as a repetitive post-conviction application under La. Code Crim. P. art. 930.4.  The court also made clear in its per curiam opinion that Besse completed his chances at post-conviction review:

> Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final.  Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.

Besse no longer has the opportunity to present his post-conviction claims (already found procedurally barred) in the state courts.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, because there are no state remedies any longer "available" to him.  <u>Gray v. Netherland</u>, 518 U.S. 152, 161-162 (1996); <u>see</u> 28 U.S.C. § 2254(b); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732, <u>citing</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 125-126, n.28 (1982).  The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies

still <u>available</u> at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (emphasis added, citations omitted) <u>Gray</u>, 518 U.S. at 161-62 (quoting <u>Engle</u>, 456 U.S. at 125 n.28, and <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989)).

I therefore find that state court review of Besse's claims must be deemed exhausted, and the claims must be evaluated for procedural default. <u>See</u> <u>Gray</u>, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); <u>Coleman</u>, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas... .").

The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted. <u>Gray</u>, 518 U.S. at 162; <u>see also</u>, <u>Coleman</u>, 501 U.S. at 735 n.1; <u>Beazley v. Johnson</u>, 242 F.3d 248, 264 (5th Cir. 2001). In this case, the state rule that prevents Besse from returning to the state courts was relied upon by the Louisiana Supreme Court when it denied his final writ application, No. 14-KH-2636. Specifically, La. Code Crim. P. art. 930.4 prevents Besse from presenting a second or another

22

successive application for post-conviction relief. By dismissing the prior writ application under Article 930.4, the Louisiana Supreme Court has already determined that Besse did not meet any of the narrow exceptions for presenting a repetitive petition that contained the same claims he now asserts in this court.

In the interest of judicial economy, I will address the procedural bar to all of Besse's claims in the following section of this report. To the extent the State's defense has been expanded, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

V.    PROCEDURAL DEFAULT

The last state court to address Besse's twenty (20) grounds in support of his ineffective assistance of counsel claim was the Louisiana Supreme Court in Writ No. 14-KH-2636. The Louisiana Supreme Court relied on La. Code Crim. P. art. 930.4 to deem the application for post-conviction relief repetitive.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman, 501 U.S. at 731-32; Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61

23

F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. However, the "State need not explicitly apply [a] procedural bar 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred [under state law].'" <u>Beazley</u>, 242 F.3d at 264 (quoting <u>Coleman</u>, 501 U.S. at 735 n.1). In this case, this procedural rule stands to bar review of all of Besse's claims.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial

of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Walker v. Martin</u>, 562 U.S. 307, 316-17 (2011); <u>Glover</u>, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) <u>Beard v. Kindler</u>, 558 U.S. 53, 60-61 (2009). The question of the adequacy of a state procedural bar is itself a federal question. <u>Beard</u>, 558 U.S. at 60 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

The last reasoned decision on these grounds to support the claim of ineffective assistance of counsel was the judgment of the Louisiana Supreme Court, citing La. Code Crim. P. art. 930.4, which indicates that the claims were barred from review because they were repetitive and successive. The court also cited this article to indicate that any future post-conviction application would also be barred. Specifically, La. Code Crim. P. art. 930.4(D) and (E) authorize dismissal of a successive application if it fails to assert a new or different claim or raises a new or different claim that was inexcusably omitted from a prior application. These provisions are independent state procedural rules that prevent review of the merits of Besse's claims.

The record clearly demonstrates that Besse violated these provisions and would again violate them if he attempts to return to state court to exhaust state court review properly. His second application for post-conviction relief asserted previously made claims and others not raised in his first application. Besse did not complete review of the denial of his first application for post-conviction relief. Thus, the only ruling on these issues is the Louisiana Supreme Court's following his second application for post-conviction relief. Under these circumstances, the provisions of Article 930.4(D) and (E) are adequate to bar federal review of Besse's claims. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994); Pedelahore v. Tanner, No. 11-1575, 2012 WL 4970684, at *9 (E.D. La. Sep. 24, 2012), report adopted, 2012 WL 5208490, at *1 (E.D. La. Oct. 17, 2012); Bell v. Baton, No. 11-0304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), report adopted, 2012 WL5364237, at *1 (M.D. La. Oct. 31, 2012) (concluding that Article 930.4(E) has been found to be an adequate independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied upon this statute in finding claims to be technically exhausted but procedurally defaulted.); Washington v. Cain, No. 98-0584, 2000 WL 863980, at *1 (E.D. La. June 27, 2000); see also, Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

The state court's rulings, therefore, were based on Louisiana law setting forth the procedural requirements for the presentation of post-conviction claims. See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the

issue).  The state courts' reasons for dismissal and bar to review of Besse's claims therefore were independent of federal law and adequate to bar review of his claims.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Id</u>. at 301 (citing <u>Coleman</u>, 501 U.S. at 748-50); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle</u>, 456 U.S. at 129).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

Besse asserts that he was unable to present all of his post-conviction claims in a proper manner because he was housed in a prison without a full law library and without trained inmate counsel to assist him.  It is well settled, however, that neither pro se status nor ignorance of the law is sufficient cause to excuse a procedural default.  <u>See</u> <u>Saahir v. Collins</u>, 956 F.2d 115, 118 (5th Cir.1992).  My review of the record does not support a finding that any factor external to the defense prevented Besse from presenting his

claims in a procedurally proper manner. The record does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

## C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no

reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Besse attempts to show his factual innocence by challenging the sufficiency of the evidence presented at trial and suggesting that the victim also may not have been on the lease to the apartment.  None of his arguments establish or raise  doubt about whether he was authorized to be in the apartment where he was found by police.  He has pointed to no evidence that would show his actual innocence of the crime for which he was convicted.  Besse has failed to overcome the procedural bar to his claims, and his claims, both actually and technically exhausted, must be dismissed with prejudice as procedurally barred.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Kevin T. Besse's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[53]

New Orleans, Louisiana, this _____8th_____ day of December, 2016.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[53]Douglass referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.