## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KEVIN T. BESSE                                          CIVIL ACTION

VERSUS                                                  NO.  16-2992

ROBERT C. TANNER, WARDEN                                SECTION "G"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  28 U.S.C. § 2254(e)(2).[1]

On December 8, 2016, I issued a report and recommendation that Besse's claims should be dismissed as procedurally barred.[2]  After considering Besse's objections, the District Judge issued an Order and Reasons sustaining Besse's objections.[3]  The District Judge remanded the matter to the undersigned to address whether petitioner's ineffective

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Record Doc. No. 22.

[3]Rec. Doc. No. 26.

assistance of counsel claims are substantial such that they establish cause for his procedural default. This supplemental report is in response to the District Court's referral.

For the following reasons, I again recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

Although my prior report details the procedural history of the underlying state criminal proceedings, the relevant facts and history are repeated here for ease of reference.

The petitioner, Kevin T. Besse, is incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[4] On January 15, 2010, Besse was charged by bill of information in Jefferson Parish with two counts of unauthorized entry into an inhabited dwelling.[5] The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial as follows:

> Anastasia Rey ("Rey"), William James ("James"), and Besse met each other while they were patients at River Oaks Hospital undergoing substance abuse treatment. When Rey, age 29, and James, an elderly gentleman, were released from River Oaks, they decided to rent a duplex together at 546 Orion in Jefferson Parish. Besse was released shortly thereafter and contacted Rey. He and Rey had a brief romantic relationship. During that time, Besse stayed with Rey overnight at her house on Orion, but he never moved into that house.
> Rey testified that she did not like Besse's possessive and controlling behavior, so she ended their relationship and asked Besse to leave the house. Besse

---

[4]Rec. Doc. No. 1.

[5]St. Rec. Vol. 1 of 6, Bill of Information, 1/15/10 (as amended 9/14/10).

refused to leave the home, so Rey left with James and instructed Besse to get his clothing and other belongings and leave her house by the time she returned. Rey and James left and drove around the neighborhood. They both agreed that Besse was "shady" and should not be in their house. While they were talking, Rey noticed that James' cell phone was on and that Besse was listening to everything they were saying.

Rey and James went to a bar near their house called "Mama's Place" to give Besse time to leave the house. While she was playing video poker, James was sitting next to her drinking. At some point, Besse walked into the bar and punched James in the face. The bartender told Besse to leave, which he ultimately did, and the bartender called the police.

When Deputy Jason Melito of the Jefferson Parish Sheriff's Office arrived, he asked James if he wanted to press charges, but James declined to do so. At that point, Besse called Rey's cell phone. Deputy Melito got on the cell phone and told Besse that Rey did not want anything to do with him, and if Besse was found at her house, he would go to jail.

After the officer left, Rey and James went home. James, who was drunk, stayed outside in the car and smoked cigarettes. Rey walked inside the house to change clothes. She went into her bedroom, turned on the television, and sat on the futon to watch it. Suddenly, Rey saw Besse standing in the doorway. Besse told Rey she was going to talk to him now. Rey "freaked out" and tried to go to the door, but, when she reached for it, Besse grabbed her and started wrestling with her. Besse was choking her, and they struggled all the way to the front room. Besse had his arm around her throat starting to cut off the air.

Rey said to Besse, "You're going to kill me," and he replied, "Yeah, I'm going to f...cking kill you." She kept trying to open the [front] door with her arms and legs, because she thought Besse would kill her if the door closed. Rey, who was screaming, was able to get out of the house. She opened the passenger side door of her car and screamed for James to help her; however, James was "out of it." At that point, Besse jumped in the front seat, and Rey took off running. Her cell phone was not working so she ran to Mama's Place and asked the bartender to call the police, which she did.

Rey was shaken up, her shirt was ripped, she was barefoot, and her pants were covered in grass. She was sore all over her body, and she had fingerprints around her neck and a bruise on her leg. Deputy Melito responded to the call at Mama's Place, and he and Rey drove back to the house.

Other officers, who were already there, had searched the interior of the house, but they could not find anyone there. At that time, Rey told the officers to check the passenger side door of her car for James. They found James slumped over and unconscious. His face was beaten and "unrecognizable." He had a severe laceration to his right eye, and severe swelling to his face and left eye. An ambulance was called, and James was taken to the hospital.

Meanwhile, Rey followed the detective in her car to the bureau and gave a statement. Afterward, Rey went back home. At Deputy Melito's suggestion, Rey called 911 to ask them to send an officer to her house to walk through it with her

before she entered the house. While Rey was waiting for the officer to arrive, she noticed that Besse had sent her several text messages, which were: (1) "I was not going to hurt you. I do love you. Sorry. I just want to talk and be friends;" (2) "From Kevin, James attacked me in the car;" (3) "Please call me!;" (4) "Do you know he was drinking? I bet not;" and (5) "I will not ever hurt you, and I did not. I just want to talk. Please forgive me."

Deputy Carey Dials eventually arrived at the house, and Rey showed her the text messages from Besse. Afterward, Rey and Deputy Dials went inside the house. Rey went into a spare room and opened the closet. When she did so, the equipment began moving and Besse jumped out. Rey screamed, alerting Deputy Dials who came in and handcuffed Besse. Besse identified himself to the officer as "Steven." The deputies noticed that Besse had a severe laceration on the knuckle of his right hand. When Deputy Melito asked Besse for his address, Besse said he had lived at the Orion house for a week, but his current address where he had lived for the longest time was 2429 Idaho Street in Kenner.

State v. Besse, 83 So. 3d 257, 260-62 (La. App. 5th Cir. 2011) (footnote omitted); State Record Volume 3 of 6, Louisiana Fifth Circuit Opinion, 11-KA-230, pages 3-6, December 28, 2011.

Besse was tried before a jury on September 14, 2010, and found guilty on count one of the lesser offense of criminal trespass and guilty as charged on count two of unauthorized entry of an inhabited dwelling.[6] On September 23, 2010, the state trial court sentenced Besse to serve thirty days in parish prison for criminal trespass and six years in prison at hard labor for unauthorized entry of an inhabited dwelling.[7]

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/10; Jury Verdict, 9/14/10; St. Rec. Vol. 3 of 6, Trial Transcript, 9/14/10.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/23/10; St. Rec. Vol. 3 of 6, 3 of 3, Sentencing Transcript, 9/23/10.

The state filed a multiple offender bill, charging Besse as a fourth felony offender.[8] The trial court held a hearing on November 10, 2010, and found that Besse was a multiple offender.[9]  The court resentenced Besse as a multiple offender to serve thirty (30) years in prison at hard labor.[10]

On direct appeal to the Louisiana Fifth Circuit, Besse's appointed appellate counsel argued that the state trial court erred in adjudicating Besse a fourth felony offender and imposed an excessive sentence.[11]  In a pro se supplemental brief, Besse asserted two errors:[12] (1) The evidence was insufficient to support the verdict of unauthorized entry into an inhabited dwelling.  (2) The petitioner was prejudiced by the introduction of other crimes evidence.

On December 28, 2011, the Louisiana Fifth Circuit affirmed Besse's convictions, finding no merit in his pro se claims.[13]  However, the court found merit in the claim that the evidence was insufficient to support the multiple offender adjudication and addressed numerous other errors in the multiple offender proceeding.  The court vacated the

---

[8]St. Rec. Vol. 1 of 6, Multiple Bill, 9/24/10.

[9]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 11/10/10; see also, Hearing Minutes, 9/30/10; St. Rec. Vol. 3 of 6, Multiple Bill Hearing Transcript, 11/10/10.

[10]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 11/10/10; St. Rec. Vol. 3 of 6, Multiple Bill Hearing Transcript, 11/10/10.

[11]St. Rec. Vol. 3 of 6, Appeal Brief, 11-KA-230, 3/28/11.

[12]St. Rec. Vol. 3 of 6, Pro Se Brief, 11-KA-230, 5/3/11.

[13]Besse, 83 So. 3d at 257; St. Rec. Vol. 3 of 6, 5th Cir. Opinion, 11-KA-230, 12/28/11.

multiple offender adjudication, rendering moot the issue of excessive sentence. The court remanded the matter to the trial court for further proceedings.

On May 25, 2012, the Louisiana Supreme Court denied without stated reasons Besse's writ application based on sufficiency of the evidence and admissibility of the other crimes evidence challenging the Fifth Circuit's ruling that affirmed his conviction.[14]

In the meantime, on remand of the habitual offender proceeding, the State re-filed its multiple offender bill, and Besse pled not guilty.[15] At a hearing on May 24, 2012, the state trial court again adjudicated Besse a fourth felony offender.[16] The court vacated the original sentence on count two and sentenced Besse as a fourth felony offender to serve thirty (30) years in prison at hard labor without benefit of probation or suspension of sentence.[17] The court also denied both of Besse's motions to reconsider the sentence.[18]

Besse initially filed an appeal from the multiple offender adjudication, but the matter was voluntarily dismissed by order of the Louisiana Fifth Circuit on January 31,

---

[14]State v. Besse, 90 So. 3d 409 (La. 2012); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2012-KO-0292, 5/25/12; La. S. Ct. Writ Application, 12-KO-0292, 1/27/12; St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2012-KO-292, 1/27/12.

[15]St. Rec. Vol. 1 of 6, Multiple Bill, 1/6/12; Minute Entry, 2/9/12.

[16]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 5/24/12; see also, Response to Multiple Bill, 2/23/12; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/24/12.

[17]St. Rec. Vol. 1 of 6, Sentencing Minutes, 5/24/12; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/24/12.

[18]St. Rec. Vol. 1 of 6, Trial Court Order, undated; Motion for Reconsideration of Sentence, 5/30/12; Trial Court Order, 7/24/12; Motion to Reconsider Sentence, 6/19/12.

2013.[19]  Under Louisiana law, the voluntary dismissal of a criminal appeal "'has all the effect of an affirmance of the conviction and sentence.'"  State v. Perkins, 988 So. 2d 793, 799 (La. App. 4th Cir. 2008) (quoting City of Shreveport v. Jones, 172 La. 833, 135 So. 373, 374 (La. 1931)); see also Watson-Buisson v. Cain, No. 15-2361, 2015 WL 12434469, at *3 (E.D. La. Nov. 4, 2015), report and recommendation adopted, 2016 WL 4592182, at *4 (E.D. La. Sep. 1, 2016).  As a result, under federal law, Besse's convictions and sentences became final thirty (30) days later, on Monday, March 4, 2013,[20] when he did not seek review in the Louisiana Supreme Court.  See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Burton v. Stewart, 549 U.S. 147, 156-57 (2007) (quoting 28 U.S.C. § 2244(d)(1)(A)) (in a criminal case, judgment includes conviction and sentence; therefore, the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review'").

---

[19]St. Rec. Vol. 4 of 6, 5th Cir. Order, 12-KA-0779, 1/31/13; Motion to Dismiss, 12-KA-0779, 1/30/13.

[20]The thirtieth day was Saturday, March 2, 2013, leaving the final day of the period to fall to the next business day, Monday, March 4, 2013. Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

On December 29, 2013, Besse signed and submitted his first application for post-conviction relief in state court in which he asserted the following grounds for relief:[21] (1)(a) ineffective assistance of counsel when counsel failed to subpoena witnesses from the list provided to him and request Rule 404(B) evidence in advance, and (b) petitioner wanted to fire counsel before trial started, but the request was denied by the state trial court; (2) conflict of interest and breach of fiduciary duty, because counsel was friends with the victim's uncle, a prominent attorney with influence in the 24th Judicial District; (3) unlawful charge and conviction based on the victim's conflicting statements about whether petitioner lived at the apartment; (4) State misconduct during Rule 404(B) introduction of res gestae evidence that petitioner beat William James when there were no witnesses to support the statement; (5) although there was medical evidence of petitioner's psychiatric problems and the state trial court denied his request for a continuance to get his medication balanced, he was not allowed to mention his mental health during trial; (6) excessive sentence because mitigating circumstances would show that he was not on needed medication and had relapsed to drugs and alcohol when the crime occurred, and his rehabilitation efforts in prison should have been considered in his sentencing.

---

[21]St. Rec. Vol. 1 of 6, Application for Post-Conviction Relief, 1/6/14 (dated 12/29/13).

On May 12, 2014, after receiving additional briefing from the parties,[22] the state trial court denied Besse's post-conviction application, finding that claims one and two and the related supplemental arguments were meritless.[23]  The court also concluded that claims two, three and five and the related supplemental arguments were procedurally barred from review under La. Code Crim. P. art. 930.4, because the claims could have been and were not raised on direct appeal.  Claim four and the related supplemental arguments were also found to be procedurally barred from review as repetitive under La. Code Crim. P. art. 930.4(C), because the other crimes evidence issue was fully litigated on appeal.  Finally, the state trial court found that claim six was a sentencing issue not cognizable on post-conviction review under La. Code Crim. P. art. 930.3.

The Louisiana Fifth Circuit denied Besse's related writ application on August 19, 2014, finding no error in the state trial court's denial of relief based on the same reasons provided by the state trial court.[24]  The appellate court also noted that Besse filed two supplements to his writ application regarding the introduction of photographs at trial and the claims had not been first presented to the state trial court.[25]  The appellate court

---

[22]St. Rec. Vol. 1 of 6, State's Response, 3/13/14; Addendum to Post-Conviction Relief, 3/27/14 (dated 3/21/14).

[23]St. Rec. Vol. 1 of 6, Trial Court Order, 5/12/14.

[24]St. Rec. Vol. 2 of 6, 5th Cir. Order, 14-KH-414, 8/19/14; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 14-KH-414, 6/2/14 (dated 5/28/14).

[25]St. Rec. Vol. 5 of 6, Supplement, 14-KH-414, 6/23/14; Addendum, 14-KH-414, 6/18/14. Specifically, Besse asserted that trial counsel was ineffective for failure to include in his objection that the photographs of James's injuries violated the confrontation clause in addition to the other crimes

declined to consider those supplemental claims for that reason. Besse did not seek review of this ruling in the Louisiana Supreme Court.

Shortly thereafter, on August 25, 2014, Besse signed and submitted to the state trial court a second application for post-conviction relief in which he sought to re-urge and "bolster" his claim of ineffective assistance of trial counsel by asserting the following grounds:[26] (1) Trial counsel failed to (a) file pretrial discovery, (b) interview witnesses, (c) file motions to suppress evidence including the prejudicial photographs, (d) file a motion in limine challenging the admissibility of the photographs, (e) file a motion to quash the repetitive subpoenas issued by the State to the victim to coerce her into testifying, (f) question why there was no preliminary hearing which would have cleared him of the charges, (g) inform the state trial court about his conflict of interest, mention the petitioner's mental health issues and timely request a sanity hearing, (h) subpoena the witnesses provided to him by petitioner, (i) object to the State's misrepresentation of plea negotiations and the State's ability to prove its case which prejudiced petitioner's choice to go to trial, (j) object to the State's amendment to the bill of information to add two counts of home invasion to the two counts of unauthorized entry, and insist that petitioner be arraigned on the amended bill, (k) object to the State's

_____

component. St. Rec. Vol. 5 of 6, Supplement, 14-KH-414, 6/23/14. In his other supplement, he argued that the state trial court erred in failing to allow the jury to review the trial exhibits during their deliberations. St. Rec. Vol. 5 of 6, Addendum, 14-KH-414, 6/18/14.

[26]St. Rec. Vol. 2 of 6, Application for Post-Conviction Relief, 9/2/14 (dated 8/25/14).

opening statement referencing the attack on William James, (l) object to the jury reviewing the evidence during deliberations, (m) include a Confrontation Clause and hearsay elements to his objection to the photographs of James.  (2) Petitioner's request to fire his counsel was denied by the state trial court, which left him with no defense for trial.

The state trial court denied the application on September 16, 2014, on grounds that it sought untimely post-conviction review under La. Code Crim. P. art. 930.8 and was successive.[27]  Besse submitted an addendum to his petition on September 21, 2014, asserting that his counsel was ineffective for failure to object on hearsay grounds to Deputy Melito's testimony about the cause of James's injuries.[28]  The state trial court declined to address the merits of the untimely claim under La. Code Crim. P. art. 930.8.[29]

On November 4, 2014, the Louisiana Fifth Circuit denied Besse's related writ application finding no error in the trial court's September 16 and 21, 2014, orders denying relief under La. Code Crim. P. art. 930.8.[30]  Besse then submitted two writ

---

[27]St. Rec. Vol. 2 of 6, Trial Court Order, 9/16/14.

[28]St. Rec. Vol. 2 of 6, Addendum to Second Post-Conviction, 9/24/14 (dated 9/21/14).

[29]St. Rec. Vol. 2 of 6, Trial Court Order, 9/30/14.

[30]St. Rec. Vol. 5 of 6, 5th Cir. Order, 14-KH-776, 11/4/14; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 14-KH-776, 10/7/14 (dated 9/28/12).

applications to the Louisiana Supreme Court, Writ Nos. 14-KH-2636 and 15-KH-20, challenging these rulings by the state trial court and the Louisiana Fifth Circuit.[31]

While these writ applications were pending, on December 3, 2014, Besse signed and submitted to the state trial court a motion to vacate the mandatory minimum habitual offender sentence and a motion to correct his sentence on other grounds.[32] The state trial court denied both motions as meritless by separate orders issued on January 5, 2015.[33]

In the meantime, Besse also submitted a motion for a new trial in the state trial court on December 23, 2014, based on his alleged discovery of a lease agreement.[34] The state trial court denied the motion on January 14, 2015.[35] Almost eight months later, on August 3, 2015, he filed another motion for new trial asserting numerous grounds for relief.[36] The state trial court denied the motion.[37] On October 6, 2015, the state trial court reissued its orders of January 14 and August 20, 2015, denying Besse's motions for

---

[31]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 14-KH-2636, 12/17/14 (dated 12/8/14); La. S. Ct. Writ Application, 15-KH-20, 1/6/15 (postal metered 12/22/15); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2014-KH-2636, 12/18/14; La. S. Ct. Letter, 2015-KH-20, 1/6/15.

[32]St. Rec. Vol. 2 of 6, Motion to Correct Illegal Sentence, 12/8/14 (dated 12/3/14); Motion to Vacate Mandatory Minimum Sentence, 12/9/14 (date 12/3/14).

[33]St. Rec. Vol. 2 of 6, Trial Court Order, 1/5/15; Trial Court Order (2), 1/5/15.

[34]St. Rec. Vol. 2 of 6, Motion for New Trial, 12/23/14.

[35]St. Rec. Vol. 2 of 6, Trial Court Order, 1/14/15.

[36]St. Rec. Vol. 2 of 6, Motion for New Trial, 8/3/15.

[37]St. Rec. Vol. 2 of 6, Trial Court Order, 8/20/15.

new trial.[38]  On December 4, 2015, the Louisiana Fifth Circuit denied relief on review of the August 20, 2015, ruling, finding that the motion for new trial was not timely filed.[39] By this time, Besse had submitted a writ application directly to the Louisiana Fifth Circuit which that court denied on October 21, 2015, because Besse had not first asserted the issues and sought relief in the state trial court.[40]

On October 23, 2015, Besse signed and submitted to the state trial court motions to correct his sentence and quash the bill of information.[41]  By separate orders issued on November 17, 2015, the court denied the motion to correct as meritless and the motion to quash as untimely.[42]  The Louisiana Fifth Circuit denied his related writ application on February 22, 2016, finding that his motion was untimely and sought relief from the multiple offender adjudication that was not cognizable on post-conviction review under La. Code Crim. P. art 930.3.[43]  On March 8, 2016, the Louisiana Fifth Circuit also denied

---

[38]St. Rec. Vol. 2 of 6, Trial Court Order, 10/6/15.

[39]St. Rec. Vol. 5 of 6, 5th Cir. Order, 15-KH-652, 12/4/15; 5th Cir. Writ Application, 10/19/15 (dated 10/9/15).

[40]St. Rec. Vol. 2 of 6, 5th Cir. Order, 15-KH-579, 10/21/15; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 15-KH-579, 9/18/15 (dated 9/2/15).

[41]St. Rec. Vol. 2 of 6, Motion to Correct Illegal Sentence, 10/28/15 (dated 10/23/15); Motion to Quash Bill of Information, 10/28/15.

[42]St. Rec. Vol. 2 of 6, Trial Court Order, 11/17/15; Trial Court Order (2), 11/17/15.

[43]St. Rec. Vol. 2 of 6, 5th Cir. Order, 15-KH-779, 2/22/16; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 15-KH-779, dated 12/7/15.

as repetitive another of Besse's writ applications in which he sought to have his second multiple offender adjudication vacated.[44]

In the meantime, on February 26, 2016, the Louisiana Supreme Court addressed and denied Besse's writ application No. 14-KH-2636 finding that, while his second application for post-conviction relief was <u>not</u> untimely under La. Code Crim. P. art. 930.8, it was repetitive under La. Code Crim. P. art. 930.4.[45]  In response to the court's mandate, on March 8, 2016, the state trial court entered a ruling denying Besse's second application for post-conviction relief as repetitive.[46]  A few weeks later, on March 14, 2016, the Louisiana Supreme Court also declined to consider Besse's writ application No. 15-KH-20, finding that it was untimely under La. S. Ct. Rule X§5.[47]  That same day, the state trial court addressed Besse's application for writ of habeas corpus and motion for a temporary restraining order filed on March 8, 2016, which it construed as applications for post-conviction relief, and denied them for seeking untimely post-conviction relief under La. Code Crim. P. art. 930.8.[48]  The state court record does not

---

[44]St. Rec. Vol. 5 of 6, 5th Cir. Order, 15-KH-782, 3/8/16; 5th Cir. Writ Application, 15-KH-782, 12/11/15 (dated 12/8/15).

[45]<u>State ex rel. Besse v. State</u>, 184 So. 3d 1272 (La. 2016); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2014-KH-2636, 2/26/16.

[46]St. Rec. Vol. 2 of 6, Minute Entry, 3/8/16.

[47]<u>State ex rel. Besse v. State</u>, 186 So. 3d 648 (La. 2016); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2015-KH-0020, 3/14/16.

[48]St. Rec. Vol. 2 of 6, Trial Court Order, 3/14/16; Application for Writ of Habeas Corpus, 3/8/16; Motion for TRO and Preliminary Injunction, 3/8/16.

reflect that Besse sought review of this ruling.  However, in an April 24, 2017 decision, the Louisiana Supreme Court found that the district court did not error in dismissing a pleading as untimely and that Besse had previously exhausted his right to state collateral review.[49]

## III.    FEDERAL HABEAS PETITION

On April 11, 2016, the clerk of this court filed Besse's federal habeas corpus petition in which he asserts that he recieved ineffective assistance of counsel because his trial counsel failed to (1) file pretrial discovery, (2) file a motion to suppress the prejudicial photographs or any other pretrial motion to suppress, (3) file a motion in limine regarding admissibility of prejudicial photographs, (4) file a motion to quash repetitive subpoenas by the State, (5) file a motion for preliminary hearing, (6) inform the court of his conflict of interest, (7) file a motion for a sanity hearing before trial, (8) assist petitioner with compulsory process by subpoenaing witnesses, (9) prepare a defense which is why petitioner wanted to fire him, (10) object to the State's misrepresentation of plea negotiations, (11) object to the State's constructive amendment to the bill of information, (12) object to the prosecutor's improper opening statements referencing the attack on James, (13) object to the jury being allowed to review the photographic evidence during deliberations, (14) object to the photographic evidence on the grounds of hearsay in violation of the confrontation clause, (15) research the case

---

[49]State ex rel. Besse v. State, 217 So. 3d 341 (La. 2017) (per curiam).

because of his travel to Arkansas, (16) move for a <u>Prieur</u> hearing before the photographs were admitted, (17) file for a bill of particulars, (18) file an omnibus motion, . . . and (20) make opening statements or closing arguments.[50]  He also alleged as claim 19 that the state trial court denied his three post-conviction motions in violation of due process.

The State filed a response in opposition to Besse's petition asserting that he failed to exhaust state court review of two claims and that the remaining claims are procedurally barred from federal habeas review.[51]

In his reply to the State's response, Besse contended that the Louisiana Supreme Court did not invoke a procedural bar but instead found his post-conviction application timely.[52]  In addition, Besse asserted that, as cause for any procedural default, he was housed in a facility that did not have an adequate law library or provide inmate counsel to assist him.  He also contended that he can show his factual innocence because he received ineffective assistance of counsel at trial and he was denied a post-conviction hearing in the state courts, and that he could show prejudice in that the State withheld <u>Brady</u> material, <u>i.e.</u> the lease agreement, and allowed the victim to give prejudicial testimony.

---

[50]Rec. Doc. No. 1.

[51]Rec. Doc. No. 20.

[52]Rec. Doc. No. 21.

Besse also asserted that claim 18 was intended to establish that there were many motions that his counsel could have filed, although he did not specify any in the reply. He also contended that claim 19 was not intended as a ground to support the ineffective assistance of counsel claim and instead was included to show that he tried to get conflict-free and effective counsel before trial.

The State's defenses of failure to exhaust and procedural default were addressed in my first report and recommendation, in which I found that Besse's claims were procedurally barred.[53]  The district judge remanded the matter to consider whether any of Besse's ineffective assistance of trial counsel claims are substantial such that they establish cause for Besse's procedural default.[54]  The State filed a response addressing the merits of petitioner's claims and re-urges its defense of procedural default.[55] Petitioner filed a traverse.[56]

IV.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[53]Rec. Doc. No. 22.

[54]Rec. Doc. No. 26.

[55]Rec. Doc. No. 43.

[56]Rec. Doc. No. 45.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[57] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Besse's petition, which, for reasons discussed in the previous Report and Recommendation, is deemed filed in federal court on April 6, 2016.[58]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). I previously found that Besse's federal petition is timely. The State has asserted the defenses of failure to exhaust and procedural default based on the presentation and disposition of his claims in the state courts. I previously found that, although state court review of some of Besse's claims was not completed in

---

[57]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[58]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court filed Besse's petition on April 11, 2016, and he was later granted pauper status. Besse dated the signature on his petition on April 6, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.

a procedurally proper manner, all of his claims are procedurally barred from federal habeas review.

The district judge, relying on <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), and <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1914 (2013), recognized that the failure to appoint counsel during the initial-review collateral proceedings may establish cause for procedural default of claims of ineffective assistance of trial counsel when the claims are "substantial."[59] A "substantial" claim is one in which the petitioner "demonstrate[s] that the claim has some merit.' " <u>Martinez</u>, 566 U.S. at 14. An "insubstantial" claim "does not have any merit" or is "wholly without factual support." <u>Id.</u> at 16.

Because the matter has been remanded for assessment of whether the claims are substantial such that Besse's procedural default of the claims would be excused, I will address the merits of the claims.

V.    <u>STANDARDS OF MERIT REVIEW</u>

A.    <u>CLAIMS ADDRESSED ON THE MERITS IN STATE COURT</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an

---

[59]Rec. Doc. No. 26, pp. 17-18.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).    The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-

application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)) (citing Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

B.    CLAIMS NOT ADDRESSED ON THE MERITS IN THE STATE COURTS

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, 120 S.Ct. 1495, applies only to claims adjudicated on the merits by the

state courts. 28 U.S.C. § 2254(d). As discussed in my previous report and recommendation, Besse did not exhaust several of his ineffective assistance of counsel claims and the merits of his remaining ineffective assistance of counsel claims were not addressed by the state courts. With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. Cullen v. Pinholster, 563 U.S. 170, 185-87 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards. Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009). Thus, I will also consider Besse's claims de novo when necessary.

VI.    EFFECTIVE ASSISTANCE OF COUNSEL[60]

      As outlined above, Besse has asserted numerous grounds for his ineffective assistance of counsel claims before and at trial allegedly in violation of the Sixth and Fourteenth Amendment rights.

      When Besse presented his claims of ineffective assistance of counsel for failing to file motions and subpoena witnesses in his first post-conviction application and

---

[60]Both Besse's memorandum and traverse in support of his petition are rambling, convoluted and disorganized. His claims often overlap and are repetitive, making his arguments difficult to follow. For ease of analysis, this report and recommendation addresses Besse's claims in a different order than they were listed in his federal application and addresses overlapping claims together to avoid repetition.

addendum, the state district court held that Besse failed to show any deficiency in counsel's performance or how he was prejudiced.[61]  As to his claim that counsel failed to request in advance Rule 404(B) evidence, the state court found that Besse had failed to demonstrate prejudice because the evidence was included in the police report and was admissible as res gestae.  The court found that Besse's conflict of interest claim was speculative and conclusory and lacked merit because he failed to prove that any bias or conflict existed.  The court found that Besse's claims of ineffective assistance of counsel as to appointment of a sanity commission had no merit because there was nothing indicating that Besse was incompetent to stand trial or assist in his defense.

The Louisiana Fifth Circuit, relying on <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), found no error in the state district court's ruling.[62]  Besse did not seek review by the Louisiana Supreme Court.

When Besse filed his second application for post-conviction relief, he asserted additional claims of ineffective assistance of counsel in that counsel failed to (1) file pretrial motions for discovery; (2) file a motion to suppress prejudicial photographs; (3) file a motion in limine related to the admissibility of prejudicial photographs; (4) file a motion to quash the State's repetitive subpoenas for Rey; (5) enforce the request for a preliminary hearing; (6) advise the trial court of a conflict of interest; (7) timely file a

---

[61]St. Rec. Vol. 1 of 6, Trial Court Order, 5/12/14.

[62]St. Rec. Vol. 2 of 6, 5th Cir. Order, 14-KH-414, 8/19/14.

motion for a sanity hearing; (8) subpoena witnesses; (9) investigate the case and formulate a defense; (10) object to the misrepresentation of plea negotiations; (11) object to the prosecution's constructive amendment of the bill of information; (12) object to the prosecution's opening statement; (13) object to the jury viewing photographs during deliberations; and (14) raise hearsay and violation of the right to confrontation objections in the objection to the admission of photographs.[63]   The state district court found the application time-barred and successive and therefore did not consider the merits of the claims.[64]   The Louisiana Fifth Circuit denied Besse's related writ application, finding no error in the trial court's denial of relief under La. Code Crim. P. art. 930.8.[65]

In his writ application to the Louisiana Supreme Court, Besse asserted additional claims of ineffective assistance of counsel, including that his counsel's travel to his home in Arkansas caused him to be inadequately prepared; his counsel failed to file omnibus motions, a motion for a bill of particulars and a motion for a Prieur hearing; and his counsel failed to give an opening statement or closing argument.[66]   On February 26, 2016, the Louisiana Supreme Court denied Besse's writ application, finding that while his second application for post-conviction relief was not untimely under Louisiana Code

---

[63]St. Rec. Vol. 2 of 6, Application for Post Conviction Relief, 9/2/14 (dated 8/25/14).

[64]St. Rec. Vol. 2 of 6, Trial Court Order, 9/16/14.

[65]St. Rec. Vol. 5 of 6, 5th Cir. Order, 14-KH-776, 11/4/14; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 14-KH-776, 10/7/14 (dated 9/28/12).

[66]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 14 KH 2636, 12/1/14 (dated 12/8/14).

of Criminal Procedure article 930.8, it was repetitive under Louisiana Code of Criminal Procedure article 930.4. Therefore, the Court did not address the merits of any of the claims presented.[67]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, which established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct

---

[67] State ex rel. Besse, 184 So. 3d at 1272; St. Rec. Vol. 5 of 6, La. S. Ct. Opinion, 2014-KH-2636, 2/26/16.

more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); see Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. at 105. Harrington recognized the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 563 U.S. at 190 (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000).   Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

In this case, Besse has provided no basis for this court to question his counsel's performance before or during trial or that undermines the deference due to his counsel's trial decisions.  Besse's claims of ineffective assistance of counsel are meritless under Strickland.  His claims are therefore insubstantial.  They do not excuse his procedural default of the claims, and they provide no basis for federal habeas corpus relief on the merits.

A.    <u>CONFLICT OF INTEREST (CLAIM NO. 6)</u>

Besse asserts that defense counsel failed to advise the trial court of a conflict of interest and continued to represent him.  Besse alleges that his counsel was a friend of attorney Jerry Archer, whom he asserts is Rey's uncle, and drank at his bar.  Besse claims that he discovered this information immediately before trial and sought to fire his attorney, Walker, but the state trial court denied his request.[68]  He claims that he was prejudiced by the conflict because defense counsel did not adequately or vigorously represent him in the pretrial and trial stages.

"'Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest.' " <u>Morin v. Thaler</u>, 374 F. App'x 545, 551 (5th Cir. 2010) (quoting <u>United States v. Vaquero</u>, 997 F.2d 78, 79 (5th Cir. 1993)).  The Supreme Court has held that prejudice is presumed when counsel is burdened by an <u>actual</u> conflict of interest. <u>Strickland</u>, 466 U.S. at 692.  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" <u>Id.</u> (quoting <u>Cuyler</u>

---

[68]Despite Besse's claim that he was aware of his attorney's alleged association with the victim's uncle before trial, there is no evidence that Besse advised the trial court of that information.  Defense counsel simply told the court that "[Besse] wants to fire me."  St. Rec. Vol. 3 of 6, Trial Transcript, p. 3, 9/14/10.  The state trial court responded, "I'm not going to allow him to fire you." <u>Id.</u>  Besse did not explain his reason for wanting to fire his counsel.  Further, Besse later withdrew his request to fire his counsel during a hearing related to the request to appoint a sanity commission.  At that time, the state trial court asked Besse, "And this morning you've changed your mind, you still want him to be your lawyer in this proceeding?"  Besse responded, "Yes, ma'am." <u>Id.</u> at p. 14.

v. Sullivan, 446 U.S. 335, 350, 348 (1980)).  Consequently, application of the actual conflict or presumed prejudice standard articulated in Cuyler is limited.

The Fifth Circuit has recognized that the Cuyler limitation applies to cases of "multiple representation" by counsel.  Beets v. Scott, 65 F.3d 1258, 1265-66 (5th Cir. 1999).  The Beets court explained that "Strickland offers a superior framework for addressing attorney conflicts outside the multiple or serial client context."  Id. at 1265.  The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act."  Id. at 1271; Moreland v. Scott, 175 F.3d 347, 349 (5th Cir. 1999).  Thus, "[u]nder Beets, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed Strickland standard."  Moreland, 175 F.3d at 349 (citation omitted).

Besse's allegation does not involve multiple representations nor any other active conflict of interest.  When a personal conflict of interest is alleged, the pertinent inquiry is whether Besse has demonstrated that his "attorney's performance fell below an objective standard of reasonableness and that it prejudiced the defense, undermining the reliability of the proceeding."  Beets, 65 F.3d at 1272-73.  Applying these standards, Besse has failed to identify any act adverse to the defense by his counsel related to the tenuous and tangential relationship, if any, between his counsel, Archer and the victim.

Besse's wholly conclusory and speculative arguments fail to meet either prong of the <u>Strickland</u> test.  Even if a conflict might conceivably have existed under these circumstances, the record contains no indication that a conflict compromised the quality of defense counsel's representation or affected the presentation of Besse's defense.  This was not a case in which counsel was actively representing multiple parties with conflicting interests so as to suggest the division of loyalties.  <u>Strickland</u>, 466 U.S. at 692.  Moreover, there is no indication that trial counsel was working against Besse's interest.  Rather, the state court record reflects that counsel negotiated a favorable plea deal for Besse that would have resulted in a reduced 12-year sentence.[69]  When Besse rejected the deal, counsel meaningfully challenged the State's case at trial.  He filed a motion for appointment of a sanity commission and objected to the State's Rule 404(B) notice.[70]  He made peremptory challenges during jury selection.[71]  Defense counsel made objections during presentation of the State's case and actively cross-examined the State's witnesses.[72]  Finally, counsel presented Besse's own testimony in his defense.[73]

---

[69]St. Rec. Vol. 3 of 6, Trial Transcript, p. 6, 9/14/10.

[70]St. Rec. Vol. 1 of 6, Motion to Appoint Sanity Commission (C.Cr.P. Art 641 et, seq.), 9/14/10; St. Rec. Vol. 3 of 6, Trial Transcript, pp. 3-4, 7-8, 9-30, 38.

[71]St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/10.

[72]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 51-52, 54, 66-69, 88-89, 91-94, 136-140, 9/14/10.

[73]<u>Id.</u>, at pp. 141-154.

Besse has failed to establish that his counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result." Strickland, 466 U.S. at 686. Therefore, his claim of ineffective assistance of counsel due to a conflict of interest is insubstantial, does not satisfy Martinez and provides no basis for federal habeas corpus relief.

B.    FAILURE TO REQUEST PRETRIAL DISCOVERY, FILE MOTIONS, SUBPOENA WITNESSES OR PREPARE (CLAIM NOS. 1, 8, 15, 17 and 18)

Besse claims that his counsel failed to request and review pretrial discovery. He asserts that defense counsel only obtained a copy of the police report. He also claims that his counsel should have filed a combination Kyles, Marshall, Brady and Giglio motion, requested a bill of particulars, filed "omnibus motions," and investigated and subpoenaed witnesses. He claims that his counsel had inadequate time to research the case and prepare for trial because he worked only three days a week to accommodate his travel to his home in Arkansas.

Besse's claim that his counsel failed to obtain discovery is refuted by the record. While Besse repeatedly insists that defense counsel waived open file discovery the morning of trial, he misinterprets the record. The record reflects that Besse's counsel was provided with discovery by the State at a hearing on February 11, 2010.[74] The morning of trial, after Besse rejected the plea offer, the prosecutor sought reciprocal

---

[74]St. Rec. Vol. 1 of 6, Minute Entry, 2/11/10.

discovery from the defense.[75]   In doing so, the prosecutor explained that he had previously provided the defense with open file discovery.[76] Defense counsel advised that he had no discovery to provide to the State; he did <u>not</u> waive open file discovery.[77]  The record further establishes that defense counsel actually reviewed discovery in that the prosecutor stated that inculpatory statements made by Besse were included in the discovery and that he had shown defense counsel photographs of text messages and postcards Besse sent to the victim.[78]

While Besse claims that his counsel should have filed various discovery motions, defense counsel is not ineffective for failing to file a motion for discovery, a <u>Brady</u> motion or other pretrial motions when, as here, the prosecution provides "open file" discovery.  <u>See</u> <u>Strickler v. Green</u>, 527 U.S. 263, 283 n.23 (1999) ("[I]f a prosecutor asserts that he complies with <u>Brady</u> through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under <u>Brady</u>."); <u>Smith v. Maggio</u>, 696 F.2d 365, 367 (5th Cir. 1983) ("Counsel had no duty to file pretrial motions, because the prosecutor established an open file policy that made the filing of discovery motions or <u>Brady</u> requests pointless.");

---

[75]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 30-31, 9/14/10.

[76]<u>Id.</u>

[77]<u>Id.</u>, at p. 31.

[78]<u>Id.</u>, at pp. 31-32.

accord <u>Anderson v. Cooper</u>, No. 10-1691, 2011 WL 666845, at *8 (E.D. La. Jan. 19, 2011), <u>report and recommendation adopted</u>, 2011 WL 666874 (E.D. La. Feb. 14, 2011); <u>Garza v. Director</u>, No. 9:08cv115, 2009 WL 33428, at *7 (E.D. Tex. Jan. 6, 2009); <u>Rose v. Johnson</u>, 141 F. Supp. 2d 661, 684 (S.D. Tex. 2001); <u>United States v. Patterson</u>, 882 F. Supp. 104, 106 (S.D. Tex. 1995).  Accordingly, these claims have no merit.

As part of his claim that counsel should have filed a <u>Brady</u> motion, Besse appears to maintain that the prosecution failed to disclose a copy of the apartment lease, the name of the homeowner and a "no probable cause" determination on the charge of second degree battery against James.[79]  There is, however, no evidence that the prosecution actually possessed any of these items.  Besse has offered <u>no</u> evidence, such as an affidavit from defense counsel, in support of his bald allegation that <u>any</u> evidence whatsoever in the prosecution's possession was withheld.

Besse claims that his counsel should have filed a motion for a bill of particulars and that his failure to do so "was prejudicial to the defense and clearly below professional norms."[80]  This claim is without merit.  Louisiana law provides that the defense can request a "bill of particulars setting forth more specifically the nature and cause of the charge against the defendant."  La. Code Crim. P. art. 484.  A bill of particulars allows the defendant to obtain further information about what the state intends

---

[79]Rec. Doc. No. 45, p. 7.

[80]Rec. Doc. No. 1, p. 30.

to prove and enables the defendant to better defend himself.  State v. Nelson, 306 So. 2d 745, 747 (La. 1975).  However, providing open file discovery relieves the prosecution from answering a request for bill of particulars.  State v. Noil, 807 So. 2d 295, 309 (La. App. 5th Cir. 2001) (citing State v. Ohrberg, 488 So. 2d 1316, 1318-19 (La. App. 1st Cir. 1984)); State v. Willis, 823 So. 2d 1072, 1081 (La. App. 2d Cir. 2002) (citing State v. Phagans, 412 So. 2d 580 (La. 1982); State v. Glynn, 653 So. 2d 1288 (La. App. 1st Cir. 1995); State v. Jones, 544 So. 2d 1209 (La. App. 3d Cir. 1989)).

The defense was afforded open file discovery in this case.  Thus, there was simply no need for defense counsel to file a motion for a bill of particulars, and a motion for a bill of particulars would have been meritless.  Failure to file a meritless motion does not constitute ineffective assistance.  See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").  Moreover, Besse has not demonstrated what information would have been disclosed in a bill of particulars that would not have been included in open file discovery and therefore has not demonstrated any prejudice.

Besse also claims that his counsel failed adequately to investigate the case and interview and call witnesses.  When a petitioner alleges failure of his counsel to

investigate, he "must allege <u>with</u> <u>specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial." <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998) (quotation omitted) (emphasis added).  In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown.  <u>See</u> <u>Diaz v. Quarterman</u>, 239 F. App'x 886, 890 (5th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 696) (some evidence is required to show that "the decision reached would reasonably likely have been different").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what <u>exculpatory</u> evidence further investigation would have revealed. <u>Moawad</u>, 143 F.3d at 948; <u>accord</u> <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Besse provides no evidence whatsoever demonstrating that his counsel did not investigate.  He merely speculates that counsel failed to do so.  While he claims that the lease agreement would have demonstrated that Rey was not a lessee, which would have damaged Rey's credibility, he presents no factual evidence, such as a copy of the lease agreement or an affidavit from the landlord, supporting this claim.  Even assuming that the lease was in James's name only, Besse has not demonstrated a reasonable probability that such evidence would have the altered the verdict, for the following reasons.

La. Rev. Stat. § 14:62.3(A) defines the unauthorized entry of an inhabited dwelling as "the intentional entry by the person without authorization into any inhabited dwelling

or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An "unauthorized entry" is one without either express or implied consent. State v. Rivet, 798 So. 2d 219, 224 (La. App. 5th Cir. 2001). Consent must be given by a person with authority or capacity to consent. State v. Kirsch, 880 So. 2d 890, 894 (La. App. 5th Cir. 2004).

Besse does not dispute that Rey lived at the residence. Besse conceded at trial that he was not involved in renting the apartment.[81] Besse explained, "That was strictly James and Anastasia. I didn't want to have no part in that because I really didn't know how long I was going to be in the relationship."[82] While Besse contends that the lease agreement would have undermined Rey's credibility, at no point did Rey ever testify she was on the lease. Rather, she simply acknowledged the existence of a lease in testifying that she rented an apartment with James and paid rent.[83]

Under Louisiana law, sufficient evidence exists to convict a defendant of unauthorized entry of an inhabited dwelling if a "legitimate occupant" of a residence advises a defendant to leave the premises and does not consent to his entry. Rivet, 798 So. 2d at 224.

---

[81]St. Rec. Vol. 3 of 6, Trial Transcript, p. 145, 9/14/10.

[82]Id.

[83]Id., at pp. 100, 119, 138.

In this case, the testimony of both Rey and Besse clearly established that Rey was a "legitimate occupant" of the residence. Thus, even assuming the existence of evidence that Rey was not a registered tenant, Rey had the authority to consent to Besse's entry into the residence as well as to revoke it.

Rey's testimony, which the jury obviously found credible, established that she ended her romantic relationship with Besse and told him to get his personal belongings and leave the residence. That evidence, along with Deputy Melito's testimony that he advised Besse that Rey did not want him to return and he would be arrested if found in the residence,[84] was sufficient to support his conviction. See, e.g., State v. Sims, 231 So. 3d 742, 750-51 (La. App. 4th Cir. 2017) (although defendant had permission to reside at residence while he and victim were dating, victim revoked permission before the home invasion); State v. Ellis, 109 So. 3d 944, 949 (La. App. 4th Cir. 2013) (when defendant entered residence after victim locked him out, sufficient evidence existed to convict him of home invasion despite evidence that defendant had oral sublease with victim, contributed to the rent, had personal belongings inside the residence and had stayed at the residence on several days leading up to the incident); State v. Coleman, 828 So. 2d 1130, 1140 (La. App. 4th Cir. 2002) (sufficient evidence to support unauthorized entry conviction when defendant had lived in the apartment and still had personal belongings there, but victim denied giving defendant permission to enter dwelling on the occasion

---

[84] Id. at pp. 45-46 (Melito), 107-108, 113, 134 (Rey).

in question); <u>Rivet</u>, 798 So. 2d at 224 (evidence was sufficient to convict defendant of unauthorized entry of inhabited dwelling when victim was a "legitimate occupant" of residence because owner had given victim permission to live in the home and defendant entered home despite victim's repeated requests for him to leave).

As to his claim that his counsel should have called defense witnesses to testify at trial, it is also <u>not</u> enough for Besse simply to make that naked allegation.  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  <u>Williams v. Cockrell</u>, 31 F. App'x 832 (5th Cir. 2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)).  Furthermore, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)); <u>Bray v. Quarterman</u>, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on such a claim, petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citing <u>Bray</u>, 265 F. App'x at 298).  The Fifth Circuit has "clarified that the seemingly technical requirements

of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

The potential witnesses identified by Besse are William James, Kavin Stann (Besse's son), Mrs. Archer (Rey's aunt), Ms. Rey's mother and father, Mr. and Mrs. Haig and their son (tenants who lived in the building), Betsy Desmore, Brenda Stock, Dunwoodie McDuffie (Besse's "boss") and Chad McDuffie (Besse's "supervisor"). Besse generally claims that these witnesses would have testified that he was at the residence "all the time," that he was accustomed to entering the residence without explicit permission and that he lived at the apartment.[85]

Besse has not met the foregoing requirements necessary to assert a successful claim of ineffective assistance of counsel for failing to subpoena and present the testimony of these witnesses. He presented no evidence, such as affidavits, to either the state courts or this court, showing that any witness was available and would have testified in a manner beneficial to the defense.[86] He offers only self-serving, speculative and conclusory allegations that the witnesses would have testified and would have done so

---

[85]Rec. Doc. No. 45, p. 15.

[86]While Besse claims that some of the witnesses signed affidavits that he provided to defense counsel, the record reflects that his attorney provided Besse with a copy of his entire file. St. Rec. Vol. 1 of 6, Office of the Disciplinary Counsel Letter, 12/10/13. Assuming that the affidavits exist and were included in the file, they should have been submitted to the court. If not, Besse has neither demonstrated that nor explained why he could not have obtained new affidavits.

in a manner consistent with <u>his</u> version of the facts.  Therefore, Besse has failed to meet his burden of proof with respect to this claim.  <u>See, e.g.</u>, <u>United States v. Cockrell</u>, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011) (citing <u>Cockrell</u>, 720 F.2d at 1427) (denying relief when "[t]he only evidence of a missing witness's testimony is from petitioner. . . .  No testimony has been given by the alleged potential witnesses, nor has an affidavit summary of the testimony they would offer been submitted to the state courts or to this Court."); <u>Anthony v. Cain</u>, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Finally, Besse claims that his defense counsel's travel to his home in Arkansas on weekends resulted in counsel's lack of preparation. He specifically notes that the state trial court admonished defense counsel for not having clothes for Besse to wear for purposes of trial.[87] Initially, while it is true that counsel required a recess to obtain clothes for Besse to wear at trial, counsel explained that he did not bring clothes that morning because Besse told him he was going to accept the plea offer.[88] Regardless, there was no prejudice as counsel actually obtained clothing for Besse and the trial commenced thereafter.[89]

Even accepting the allegations that counsel shortened his work week to accommodate his travel, Besse offers absolutely no proof to support that these circumstances affected counsel's representation of petitioner. Rather, the record reflects that counsel began representing Besse in this case on December 10, 2009.[90] The trial in this case did not occur until September 2010, nine months later. The case was not complex and this period of time was more than sufficient for counsel to prepare. Besse is required to present more than conclusory assertions and speculation to establish ineffective assistance of counsel. See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir.

---

[87]Rec. Doc. No. 1, p. 29.

[88]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 3, 5, 9, 9/14/10.

[89]Id., at pp. 5-6.

[90]St. Rec. Vol. 1 of 6, Motion for Preliminary Hearing, 12/10/09.

1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); accord Woodfox, 609 F.3d at 809 n.17; United States v. Holmes, 406 F.3d 337, 361 (5th Cir. 2005).

For these reasons, Besse has failed to establish any deficiency or prejudice arising from counsel's review of discovery, his investigation of the case, his failure to file pretrial motions and a request for bill of particulars, his preparedness for trial and decisions regarding presentation of witnesses. Having met neither prong of Strickland, he has not shown that any of these claims are substantial under Martinez. As a result, petitioner's procedural default of these claims is not excused, and the substance of these ineffective assistance of counsel claims does not warrant federal habeas corpus relief.

C.    PRELIMINARY HEARING (CLAIM NO. 5)

Besse asserts that his counsel was ineffective in failing to enforce his request for a preliminary hearing. The State responds that a decision to waive a preliminary hearing is a strategic decision left to counsel.

Louisiana law provides that either the State or the defense can move for a preliminary examination under La. Code Crim. P. art. 292. The primary purpose of the preliminary examination is to insure that probable cause exists to hold the defendant in custody pending trial. State v. Holmes, 388 So. 2d 722 (La. 1980); State v. Mayberry, 457 So. 2d 880, 881 (La. App. 3d Cir. 1984). Under state law, while there is no requirement that a preliminary hearing be held, the court must provide the hearing when

one is requested.  <u>State v. Gomez</u>, 940 So. 2d 663, 663-64 (La. 2006) (Victory, Traylor & Weimer, JJ., concurring in writ denial).

Louisiana law provides that, when the evidence does not establish probable cause at a preliminary examination, the defendant will be released from custody or bail. However, the State may still proceed with criminal charges against the individual.  La. Code Crim. P. art. 296; <u>State v. Lewis</u>, 28 So. 3d 548, 555 (La. App. 4th Cir. 2009); <u>Mayberry</u>, 457 So. 2d at 882.  When no preliminary examination occurs, "the issue is moot after conviction, at least in the absence of prejudice." <u>State v. Washington</u>, 363 So. 2d 509, 510 (La. 1978).

In this case, defense counsel filed a motion for a preliminary hearing on December 10, 2009.[91]  The preliminary hearing was set for January 19, 2010.[92]  Besse was charged by bill of information on January 15, 2010 and arraigned on January 19, 2010.[93]  At the time of his arraignment, the preliminary exam was continued without date.[94]  The record does not reflect that a preliminary examination ever occurred.

While Besse claims that a preliminary hearing would have prevented the charges from being filed, this claim is meritless.  As explained above, under Louisiana law, a

---

[91]St. Rec. Vol 1 of 6, Motion for Preliminary Hearing, 12/10/09.

[92]St. Rec. Vol. 1 of 6, Order, 1/6/10.

[93]St. Rec. Vol. 1 of 6, Bill of Information, 1/15/10 (as amended 9/14/10); Minute Entry, 1/19/10.

[94]St. Rec. Vol. 1 of 6, Minute Entry, 1/19/10; Court Disposition, 1/19/10.

finding of no probable cause at a preliminary hearing results only in a defendant's release from custody or bail, La. Code Crim. P. art. 296; it does <u>not</u> result in dismissal of the charge and does <u>not</u> prevent the State from prosecuting the charge. The original bill of information in this case had already been filed four days before the date on which the preliminary hearing was to be held. When Besse appeared for arraignment, the preliminary hearing was continued. While the record does not reflect why the preliminary hearing never occurred, defense counsel presumably waived his request for preliminary exam when the State thereafter provided him with open file discovery, which would have apprised counsel of the nature of the evidence against Besse. Regardless, even assuming that Besse might have been temporarily released absent a showing of probable cause at a preliminary hearing, a wholly speculative supposition, the State still could have proceeded with the charges against him.

Other than having to go to trial, Besse has not suggested any prejudice or deficiency in counsel's failure to enforce his request for preliminary examination. He has not identified any information or evidence which might have been obtained from the State during a preliminary hearing that was not included in the open file discovery. In addition, because he remained in jail awaiting trial,[95] the state trial court gave him credit

---

[95]St. Rec. Vol. 1 of 6, Minute Entry, 1/19/10; Minute Entry, 2/11/10; Minute Entry, 3/4/10; Minute Entry, 3/18/10; Minute Entry, 6/21/10; Minute Entry, 8/2/10; Minute Entry, 8/4/10; Minute Entry, 8/5/10; Minute Entry, 9/7/10; Minute Entry, 9/9/10.

for time served against the sentences ultimately imposed,[96] which has enured to his benefit. Considering these matters, Besse has not shown any prejudice resulting from counsel's failure to enforce his request for a preliminary hearing.

In addition, the United States Court of Appeals for the Fifth Circuit has held that a prisoner has no federal constitutional right to a preliminary examination. Harris v. Estelle, 487 F.2d 1293, 1296 (5th Cir. 1974); Weary v. Cain, No. 10-1793, 2011 WL 7416509, at *11 (E.D. La. Apr.21, 2011), report and recommendation adopted, 2012 WL 601862 (E.D. La. Feb.22, 2012). Thus, counsel's failure to enforce his request for a preliminary hearing in the instant case also did not violate federal law, and in that regard was not deficient or prejudicial to Besse.

This claim is insubstantial under Martinez. It neither provides cause to excuse Besse's procedural default nor warrants substantive federal habeas corpus relief.

D.    QUASH REPETITIVE SUBPOENAS FOR REY (CLAIM NO. 4)

Besse asserts his counsel was ineffective for failing to move to quash the prosecution's subpoenas for Rey. He claims that Rey was uncooperative and did not want to be found because she did not wish to testify against him. He further claims that the State forced her to testify, which resulted in her giving perjured testimony.

---

[96]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/23/10; Multiple Bill Hearing Minutes, 11/10/10; Sentencing Minutes, 5/24/12.

Multiple subpoenas were issued for Rey to appear at trial.[97]  The inability to locate Rey caused the State's need for several continuances of the scheduled trial.[98]  The record demonstrates that at least one of the continuances was granted over defense counsel's objection.[99]  Ultimately, Rey was located.  Then, on September 9, 2010, defense counsel sought a continuance of trial so that he could have additional time to prepare.[100]  The motion was granted and trial was rescheduled for and commenced on September 14, 2010.[101]

Besse provides no factual or legal basis to file a motion to quash the subpoenas for Rey, who was a necessary witness for the State's case.  Besse has not demonstrated any reasonable probability that a motion to quash would have been successful.  Counsel was not ineffective in failing to pursue a motion he likely determined to be futile or meritless, and which would not have been successful or changed the outcome of the case.  See Johnson, 306 F.3d at 255 (counsel is not required to make futile motions or frivolous objections); Smith, 907 F.2d at 585 n.6 ("Counsel is not deficient for, and prejudice does

---

[97]St. Rec. Vol. 2 of 6, Subpoena, 3/23/20; Subpoena, 4/21/10; Subpoena, 8/6/10; Subpoena, Subpoena, 8/16/10; Subpoena, 9/13/10

[98]St. Rec. Vol. 1 of 6, Minute Entry, 4/19/10; Minute Entry, 9/7/10.

[99]St. Rec. Vol. 1 of 6, Minute Entry, 4/19/10.

[100]St. Rec. Vol. 1 of 6, Minute Entry, 9/9/10.

[101]Id.; Trial Minutes, 9/14/10.

not issue from, failure to raise a legally meritless claim."); <u>Koch</u>, 907 F.2d at 530 (concluding that "counsel is not required to make futile motions or objections.").

For these reasons, Besse's assertion that his counsel was ineffective for failing to move to quash the subpoenas for Rey is without merit. This claim is unsubstantial. It does not satisfy the <u>Martinez</u> exception. It offers no support for substantive federal habeas corpus relief.

E.    <u>SANITY HEARING (CLAIM NO. 7)</u>

Besse asserts that his counsel was ineffective for failing to file timely for a sanity hearing before trial based on petitioner's mental health conditions, including bipolar disorder, post traumatic stress disorder and attention deficit hyperactivity disorder ("ADHD"). He further asserts that counsel should have argued that Besse was not competent at the time of the offense. Besse asserts that his counsel "was well aware of his client's mental health condition because he represented Mr. Besse numerous times before this trial."[102]

The well-settled constitutional standard for competency to proceed is whether a defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" <u>Drope v. Missouri</u>, 420 U.S. 162, 172 (1975) (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960)); <u>accord</u> <u>Austin v. Davis</u>, 876 F.3d 757, 777

---

[102]Rec. Doc. No. 1, p. 19.

(5th Cir. 2017), cert. denied, No. 17-8528, 2018 WL 1859399 (June 11, 2018); Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980).   Mental incapacity to proceed can be asserted at any time.  La. Code Crim. P. art. 642.  Under Louisiana law, "[t]he court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed."  La. Code Crim. P. art. 643.  Louisiana law provides "mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."  La. Code Crim. P. art. 641.

The record reflects that, after Besse informed his counsel that he did not wish to accept the plea offer, defense counsel moved in open court, apparently at Besse's request, to appoint a sanity commission pursuant to La. Code Crim. P. art. 641.[103]   Defense counsel explained that Besse claimed he had an extensive medical history, that he was bipolar and schizophrenic and that he had taken medication for several years.[104]  Defense counsel admitted that he did not have medical records to support Besse's claims because Besse had not advised him of his medical history before that week and had advised counsel that he intended to plead guilty.[105]  The state trial court conducted a hearing to

---

[103]St. Rec. Vol. 1 of 6, Motion to Appoint Sanity Commission (C.CR.P. Art. 641 Et Seq.), 9/14/10; St. Rec. Vol. 3 of 6,Trial Transcript, pp. 3-4, 7-9/14/10.

[104]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 9-10, 9/14/10.

[105]Id., at pp. 9-11.

determine whether there were reasonable grounds to doubt Besse's mental capacity pursuant to La. Code Crim. P. arts. 641 and 643.[106]

Besse testified at the hearing. He claimed he was diagnosed as schizophrenic and had brain damage and memory issues.[107] He candidly admitted that, while defense counsel had previously represented him on several occasions, he had <u>not</u> told defense counsel about his medical or mental health background until a few days earlier when he had a "manic spell."[108] Besse claimed that he did not know what he was doing and needed to have his medications readjusted.[109]

After listening to his testimony, the state trial court found that Besse's claim of mental incapacity was an "attempt to disrupt the judicial system."[110] The court found that Besse was lucid, understood the proceedings, had a good memory and was able to assist counsel.[111] The court noted that defense counsel had represented Besse in four cases during which he had no reason to question his sanity and further felt that he was

---

[106]<u>Id.</u>, at pp. 12-30.

[107]<u>Id.</u>, at pp. 12-14.

[108]<u>Id.</u>, at pp. 15-16, 25-26.

[109]<u>Id.</u>, at pp. 19-20, 22.

[110]<u>Id.</u>, at p. 29.

[111]<u>Id.</u>, at pp. 28, 30.

competent to enter a guilty plea that morning.[112]  The court also noted that the doctor who had seen Besse at the jail a few days earlier also had no reason to question his sanity.[113] The court found that Besse understood the plea offer and rejected it.[114]  Finding no reason to doubt Besse's mental capacity, the court denied the motion to appoint a sanity commission.[115]  Besse claims that he was prejudiced by the state trial court's denial of a continuance for counsel to obtain medical records that allegedly would have supported his request for appointment of a sanity commission.  This claim does not state a cognizable challenge to <u>counsel's</u> performance when Besse complains that the <u>state</u> <u>trial</u> <u>court</u> denied a request for a continuance.

While Besse also claims that his counsel should have obtained his medical records to present at the hearing, Besse proffers no evidence that he was actually incompetent to stand trial or that counsel had any reason to believe that medical records concerning Besse's medical conditions were needed that day.  He makes no supported argument that he did not understand the proceedings against him.  There is nothing in the record to indicate that Besse's demeanor before counsel or the state trial court was ever questionable.  On the contrary, as the state trial court explained, defense counsel had

---

[112]<u>Id.</u>, at pp. 28-29.

[113]<u>Id.</u>, at p. 27.

[114]<u>Id.</u>, at p. 28.

[115]<u>Id.</u>, at pp. 29-30.

previously represented Besse in multiple cases during which he had no basis to question Besse's competency.  The facts that defense counsel had no knowledge of Besse's medical history until Besse advised him about it just days before trial and that defense counsel believed that Besse was competent to accept the plea offer on the morning of trial reasonably explain counsel's failure previously to obtain medical records and file a motion for appointment of a sanity commission.  Besse does not deny that he was able to assist counsel.  Even here, he claims to have provided counsel with names of potential witnesses and "forced" his counsel to cross-examine witnesses at his trial.[116]  Besse testified in his defense at trial, understood the questions asked and responded appropriately.[117]  It appears that counsel's only reasons for filing the motion the morning of trial were that Besse rejected the plea offer and requested that counsel do so.  Thus, Besse has failed to establish any deficiency or prejudice arising from the timing of his counsel's request for appointment of a sanity commission or counsel's failure to obtain Besse's medical records.

Besse also asserts that his counsel should have argued that he was not competent at the time of the offense.  The decision by counsel whether to present an insanity defense is a matter of trial strategy.  McInerney v. Puckett, 919 F.2d 350, 353 (5th Cir. 1990).  "A conscious and informed decision on trial tactics and strategy cannot be the

---

[116]Rec. Doc. No. 1, pp. 20-21; Rec. Doc. No. 45, pp. 4., 14

[117]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 141-168, 9/14/10.

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir. 2005) (citations omitted).  In evaluating counsel's decision regarding an insanity defense, the courts are reminded that "the insanity defense involves case by case determinations of fact and will often fail even if raised and even where some indications of irrationality exist." McInerney, 919 F.2d at 353.

Thus, to establish ineffective assistance of counsel for failing to assert an insanity defense or to advise the client to enter a plea of not guilty and not guilty by reason of insanity, petitioner must show that counsel had some real indication that a mental impairment was a viable defense to the crime charged.  Byrne v. Butler, 845 F.2d 501, 513 (5th Cir. 1988); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir. 1987).  It is not enough for a habeas petitioner simply to offer the speculative possibility of a successful insanity plea and defense.  Long v. Krenke, 138 F.3d 1160, 1162 (7th Cir. 1998).

As to the affirmative defense of insanity, the factfinder is required to determine whether, at the time of the offense, the defendant was incapable of appreciating the nature and wrongfulness of his conduct.  United States v. Levine, 80 F.3d 129 (5th Cir. 1996); La. Rev. Stat. § 14:14.  Besse, however, has not identified any basis for his attorney to have pursued an insanity defense.

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense.  La. Rev. Stat. § 15:432.  To rebut the presumption of sanity and avoid criminal

responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. Code Crim. P. art. 652. The defense of insanity is defined by La. Rev. Stat. § 14:14 as follows: "If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."

Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect." State v. Williams, 346 So. 2d 181, 186 (La. 1977). A mental disease or disorder short of legal insanity is insufficient to support an insanity defense. Id.; State v. Koon, 704 So. 2d 756, 768 (La. 1997); State v. Weber, 364 So. 2d 952, 956 (La. 1978). In addition, evidence of anger and emotional provocation is not admissible to establish insanity in Louisiana. See State v. Pitre, 901 So. 2d 428, 444 (La. App. 1st Cir. 2004) ("[E]vidence of a mental disease or defect affecting defendant at the time of an offense is inadmissible, whether it is an organically caused mental condition or a psychologically or emotionally induced mental condition.") Because of this heavy burden, counsel is not ineffective for failing to assert insanity as a defense when the facts and record contain no indication or evidence that the petitioner had a mental disorder that rendered him insane, as defined above. Johnson v. Cain, 548 F. App'x 260, 261 (5th Cir. 2013); Byrne, 845 F.2d at 513.

Besse has not provided the state courts or this federal habeas court with any evidentiary support for his suggestion that his sanity should have been questioned. Counsel's decision not pursue a baseless insanity defense was more than reasonable, given the evidence of Besse's state of mind in the state court record. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." United States v. Cronic, 466 U.S. 648, 656 n.19 (1984). "If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones, 163 F.3d at 304 (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989)).

Besse has failed to establish deficient performance or prejudice resulting from counsel's actions with regard to the request for appointment of a sanity commission or his failure to pursue an insanity defense. He has failed to meet either prong of the Strickland standard. Thus, Besse does not show that these ineffective assistance claims against trial counsel have merit. His procedural default of the claims is not excused, and they provide no basis for federal habeas corpus relief.

F.    MISREPRESENTATION OF PLEA NEGOTIATIONS/CHALLENGE BILL OF INFORMATION (CLAIM NOS. 10 and 11)

Besse asserts that his counsel was ineffective when he failed to object to the prosecution's misrepresentation of plea negotiations. He claims that he chose to proceed to trial based on the original charges of home invasion, but the prosecution amended the charges on the morning of trial, which amounted to prosecutorial vindictiveness. He further claims that his counsel should have challenged the "constructive amendment" of the bill of information under La. Code Crim. P. art. 489.[118]

On the morning of trial, defense counsel advised the state trial court that, while Besse had previously told counsel he was going to accept the plea offer, he had changed his mind.[119] The terms of the offered plea bargain were placed on the record:

> MR. CLAUSS [prosecutor]:
>
> Your Honor, the matter is set for trial today. For the record, the State has offered to amend the charge in this case to an unauthorized entry of inhabited dwelling in exchange for the defendant's plea of guilty to that charge. And to –in lieu of a quadruple felony bill filing, double felony offender bill of information for his plea of guilty to that. And the range we suggested would be the maximum on that plea, which would be 12 years in prison. And it's my understanding that Mr. Bessie [sic] has declined that offer. I just want to make sure that's on the record. Therefore, there are no offers. We are ready for trial today.[120]

---

[118]Rec. Doc. No. 45, p. 19.

[119]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 3, 5, 9, 9/14/10.

[120]Id., at pp. 6-7.

The state trial court confirmed Besse's rejection of the offer:

THE COURT:

Let me ask you this:  The State offered you 12 years on a double.  You do not want to accept that offer?

THE WITNESS [Besse]:

No, ma'am.  I'm innocent.[121]

The prosecution then advised the court of its intent to amend the bill of information to charge two counts of unauthorized entry of an inhabited dwelling, rather than home invasion, regardless whether Besse pled guilty.[122]  The prosecutor advised that he had informed defense counsel of his intention to amend the information on the prior evening.[123]  The prosecutor explained the amended charges and identified the applicable statutory provision.[124]  Defense counsel raised no objection to the amendment.

Under Louisiana law, the prosecution may make substantive amendments to a bill of information to charge a new offense before trial commences.  State v. Williams, 15 So. 3d 348 (La. App. 2d Cir. 2009); State v. Olsen, 496 So. 2d 1260, 1264 (La. App. 1st Cir. 1986); see also State v. Ignot, 701 So. 2d 1001, 1013 (La. App. 2d Cir. 1997) (prosecution was entitled to amend information to charge unauthorized use of a motor

---

[121]Id. at p. 14.

[122]Id., at p. 32, 9/14/10.

[123]Id., at p. 33.

[124]Id., at p. 40.

vehicle in violation of La. Rev. Stat. § 14:68.4 rather than unauthorized use of a movable with a value greater than $1,000 under La. Rev Stat. § 16:68(B) the day of trial, when first prospective juror had not been called) (citing <u>State v. Johnson</u>, 637 So. 2d 1033 (La. 1994)).  When the prosecution amends the bill, the prospective remedy is a motion for a continuance under La. Code Crim. P. art. 489, not an objection to the amendment. <u>Ignot</u>, 701 So. 2d at 1013.  An objection to the amendment therefore was not necessary and defense counsel's failure to object did not prejudice Besse.

Besse contends that the amended bill of information had a fatal defect in that it did not state ownership under La. Code Crim. P. art. 471.  Article 471 provides that "[o]wnership, or the name of the owner of property, need <u>not</u> be alleged in the indictment, unless such ownership or name of the owner is essential to the offense." (Emphasis added).

Identification of the owner of the property is not an essential element of the offense of unauthorized entry of an inhabited dwelling under La. Rev. Stat. § 14:62.3. <u>State v. Reel</u>, 126 So. 3d 506, 515-16 (La. App. 4th Cir. 2012).  Rather, the elements of the crime of unauthorized entry of an inhabited dwelling are that (1) the accused entered a dwelling, (2) the dwelling did not belong to the accused, (3) the dwelling was used in whole or in part as a home or place of abode and (4) the entry was not authorized.  La. Rev. Stat. § 14:62.3.  In this case, the amended bill of information clearly states that

Besse committed an unauthorized entry of a dwelling inhabited by Anastasia Rey.[125] Counsel was not ineffective for failing to make a baseless objection.

Besse also claims that amendment of the bill of information after he elected to proceed to trial constituted prosecutorial vindictiveness. The State's continued pursuit of charges after a plea offer is rejected does not amount to prosecutorial misconduct or vindictive prosecution. See United States v. Ward, 757 F.2d 616, 620 (5th Cir. 1985) (to be vindictive, the State's actions must exceed the mere motive to prosecute the crime committed); see also United States v. Molina, 530 F.3d 326, 332 (5th Cir. 2008) (citing United States v. Batchelder, 442 U.S. 114, 124 (1979)) (Prosecutors generally have discretion to decide whom to prosecute, which offense to charge and what measure of punishment to seek). Instead, prosecution is vindictive when the prosecutor increases the severity or brings additional charges against a defendant to punish him for the exercise of his procedural rights. Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998); United States v. Ward, 757 F.2d 616, 619-20 (5th Cir. 1985).

To establish vindictive prosecution, a defendant must either prove actual vindictiveness or demonstrate circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. United States v. Goodwin, 457 U.S. 368, 376, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). Bare allegations of vindictive

---

[125]St. Rec. Vol. 1 of 6, Bill of Information, 1/15/10 (as amended 9/14/10).

prosecution are not sufficient to support a claim.  United States v. Lacey, 91 F. App'x

939, 2004 WL 413215 at *1 (5th Cir. Mar.3, 2004) (citing Neal, 141 F.3d 207 at 214).

In this case, Besse fails to show that the prosecution was vindictive.  The amended

bill of information charged a lesser offense.  Besse's sentencing exposure decreased, and

this lessened prison exposure improved his position as a result of the charged

amendment.  Such actions of a prosecutor cannot be characterized as vindictive, and no

presumption of prosecutorial vindictiveness arises.  Therefore, no basis existed for

defense counsel to claim vindictive prosecution, and no prejudice resulted from his

failure to do so.

Construing his claims broadly, Besse suggests that his counsel should have moved

for a continuance of trial based on the amended bill of information.  When a bill of

information is amended, a defendant may obtain a continuance in some circumstances

under La. Code Crim. art. 489, which provides:

> If it is shown, on motion of the defendant, that the defendant has been
> prejudiced in his defense on the merits by the defect, imperfection,
> omission, uncertainty, or variance, with respect to which an amendment is
> made, the court shall grant a continuance for a reasonable time.   In
> determining whether the defendant has been prejudiced in his defense upon
> the merits, the court shall consider all the circumstances of the case and the
> entire course of the prosecution.  If it becomes necessary to discharge the
> original jury from further consideration of the case, the trial before a new
> jury will not constitute double jeopardy.

Although defense counsel did not move for a trial continuance based on the

amendment to the bill of information, Besse has not demonstrated that a continuance was

necessary or that the state trial court would have granted a continuance.  The amended bill was read to the jury in Besse's presence and he was fully aware of the charges.[126] The amended bill of information did not include information for which defense counsel did not have the opportunity to prepare.  Rather, as the prosecution explained, the evidence used at trial remained the same.[127]  Furthermore, the amended bill of information actually benefitted Besse, as it charged a lesser offense.

Under these circumstances, Besse has not demonstrated that there was a legitimate basis to continue the trial due to this amendment of the bill of information.  A motion for continuance therefore would have been futile.  As previously explained, counsel does not act deficiently in failing to urge a meritless argument or motion.  Johnson, 306 F.3d at 255; Smith, 907 F.2d 585 n.6; Koch, 907 F.2d at 527.

Besse's claims of ineffective assistance of counsel for failure to object to the misrepresentation of plea negotiations and the amendment of the bill of information are insubstantial.  Therefore, he fails to satisfy Martinez and has neither demonstrated cause for his procedural default of these claims nor a substantial basis for federal habeas relief.

---

[126]St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/10.

[127]St. Rec. Vol. 3 of 6, Trial Transcript, p. 33, 9/14/10.

G.    MOTION TO SUPPRESS, MOTION IN LIMINE, OBJECT TO OPENING STATEMENT, OBJECT TO PHOTOS BASED ON HEARSAY IN VIOLATION OF CONFRONTATION CLAUSE, REQUEST A PRIEUR HEARING (CLAIM NOS. 2, 3, 12, 14, and 16)

Besse argues that his counsel should have filed a motion to suppress prejudicial photographs depicting James's injuries and any other motions to suppress, a motion in limine to prohibit the introduction of the photographs and a motion for a Prieur hearing.[128]  He also faults his counsel for failure to object to the photographs on hearsay grounds, depriving him of his right of confrontation.  He additionally claims that his counsel was ineffective for failing to object to the prosecution's opening statement.

On the day of trial, the State filed a notice of intent to introduce Rule 404(B) evidence, including evidence that, after Rey found Besse in the apartment the first time, Besse attacked James for a second time.[129]  Besse's attorney objected to the introduction of the evidence several times.  Initially, the attorney stated:

> And I've also this morning been handed to me by the State certain motions: One has been the intent to introduce 404(b) evidence.  And, Your Honor, this comes when we are prepared for trial.  It's given me no time to prepare or request a prieur [sic] hearing in this matter.  And so I would object to the 404(b) evidence being entered in this case.[130]

---

[128]State v. Prieur, 277 So. 2d 126 (La. 1973) (hearing conducted to determine admissibility of evidence of defendant's other acts of misconduct when such acts are allegedly offered not to show defendant's bad character, but to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or connection to conduct integral to the act which is the subject of the trial).

[129]St. Rec. Vol. 1 of 6, Notice of Intent to Introduce 404(B) Evidence, 9/14/10.

[130]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 7-8, 9/14/10.

The State explained that it planned to introduce evidence that, after the first unauthorized entry, Besse attacked James as James sat in Rey's car outside the apartment. The State argued that Besse's actions were part of a single course of criminal activity and the evidence was therefore res gestae.[131]

Defense counsel responded:

And, Your Honor, the reference to Mr. William [James] and he wants to introduce evidence that Mr. William – that it was a crime committed on Mr. William, and Mr. Besse is not charged with that crime, and that's the problem. He's going to introduce evidence of activity, criminal activity of which Mr. Besse is not charged.
. . . .
And on 404(b), Your Honor, by receiving this notice this morning, it calls for – the statute calls for a reasonable motive in advance of trial, not day of trial.[132]

The state trial court overruled the defense objections and found the evidence admissible.[133]

During Deputy Melito's testimony relating to James's physical appearance when Melito found James in the vehicle, defense counsel again objected on the basis that the State was presenting evidence of other crimes with which Besse was not charged.[134] At sidebar, the State advised that it intended to show photographs of James's injuries, and

---

[131]Id., at pp. 34-38.

[132]Id., at p. 38.

[133]Id.

[134]Id., at p. 51.

defense counsel again objected.[135]  The state trial court determined that the photographs supported Deputy Melito's credibility and overruled the defense objections.[136]  The court again overruled defense counsel's renewed objection when the State sought to publish the photographs to the jury.[137]

This record demonstrates that defense counsel clearly objected numerous times to the evidence relating to Besse's attack of James.  The fact that the objections were not successful does not amount to ineffective assistance of counsel.

The issue of the admission of photographs and testimony relating to James was addressed on direct appeal.  The Louisiana Fifth Circuit explained:[138]

> We find the trial court correctly admitted the evidence under the "res gestae" or integral act evidence rule since the attacks on James occurred during one continuous chain of events that night.  The testimony indicates that Besse punched James in the face at the bar before going back to the house the first time and that Besse got into the car with James and severely beat him after Besse tried to strangle Rey, but before Besse re-entered the house a second time.  There was a close connexity between the charged and uncharged conduct, which assured that the purpose served by admission of the evidence in question was to complete the story of the crime on trial by proving its immediate context of happenings near in time and place, rather than to depict the defendant as a bad man.

---

[135]Id., at pp. 52, 54.

[136]Id., at p. 54.

[137]Id., at p. 56.

[138]Besse, 83 So. 3d at 266; St. Rec. Vol. 3 of 6, 5th Cir. Opinion, 11-KA-230, 12/28/11.

The Louisiana Supreme Court denied petitioner's related writ application without stated reasons.[139]  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The state courts fully considered the evidence related to the attack on James and found it admissible.  Besse has not shown a reasonable probability that the outcome of the proceedings would have been different if his counsel had duplicatively and cumulatively challenged the admissibility of the evidence through a motion to suppress, a motion in limine or a motion for a Prieur hearing.

Besse also faults his counsel for failure to object to the photographs of James as inadmissible hearsay evidence in violation of his right to confrontation.  However, the photographs were not hearsay.  Hearsay is an out-of-court "statement," which means an "oral " or "written" assertion or nonverbal "conduct."  La. Code Evid. art. 801(a); Fed. R. Evid. 801(a).  A photograph is none of these things.  Instead, a photograph is demonstrative or illustrative evidence, a tangible item, not a statement. S. Goode and O. Welborn, Courtroom Handbook on Federal Evidence 276 (West 2018).  A photograph is fully admissible non-hearsay, as long as it is properly authenticated and relevant.  In this case, the State laid a proper foundation for admission of the photographs during

---

[139]Besse, 90 So. 3d at 409; St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2012-KO-0292, 5/25/12;

Deputy Melito's testimony.[140]  Deputy Melito did not testify about any statement made by James.  The deputy testified regarding his observations when he first spoke with James at the bar and later when he found James beaten in the vehicle.[141]  When questioned about the photographs, Deputy Melito confirmed that they were accurate representations of James's physical condition at the time he found James in the vehicle.[142]  With no out-of-court testimonial statements by James at issue, Besse does not present a valid Confrontation Clause issue.

For these reasons, counsel did not act deficiently or prejudicially in failing to object to the photographs of James on the basis of hearsay depriving Besse of his right of confrontation.  In this instance, an objection by defense counsel to introduction of the photographs on those bases would have been wholly without merit.  See Clark, 673 F.3d at 429 (quotation omitted) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance").  Under these circumstances, counsel's performance concerning the photographs of James was not constitutionally ineffective.

Besse also maintains that his counsel was ineffective because he failed to object during opening statement when the prosecutor stated that "Mr. Besse followed Ms. Ray

---

[140]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 55-56, 9/14/10.

[141]Id., at pp. 50, 57.

[142]Id., at pp.55-57.

[sic] to a vehicle in which Mr. James sat and attacked Mr. James against [sic]."[143]  Besse

claims that this statement improperly shifted the burden to him to prove his innocence.

The prosecution's opening statement is not included in the state court record trial

transcript.  Therefore, the court cannot determine whether the prosecution actually made

the remark alleged by Besse.  Even assuming that the prosecution made that remark,

however, decisions regarding whether to object to comments made in opening statements

or closing arguments fall within the ambit of trial strategy.  Drew v. Collins, 964 F.2d

411, 423 (5th Cir. 1992).  In this instance, it would have been pointless to object to the

remark when the prosecutor was merely explaining what he believed the evidence would

show consistently with La. Code Crim. P. art. 766.[144]

In addition, the jury was specifically instructed that the prosecutor's opening

statement was not evidence and that a decision should be based on the evidence in the

case.[145]  It was also instructed about the presumption of innocence and the prosecution's

burden to prove petitioner's guilt beyond a reasonable doubt.[146]  The jury is presumed to

have followed the instructions given to it by the trial judge.  Weeks v. Angelone, 528

---

[143]Rec. Doc. No. 1, p. 23.

[144]La. Code Crim P. art. 776 provides that "[t]he opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."

[145]St. Rec. Vol. 1 of 6, Closing Jury Instructions, pp. 2-5, 9/14/10.

[146]Id., at pp. 2-3, 8.

U.S. 225, 234 (2000); Woods v. Johnson, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996).

Therefore, no prejudice has been established.

Besse's claims of ineffective assistance of counsel for failure to file a motion in limine, a motion to suppress and a motion for a Prieur hearing; object to the photographs on the basis of impermissible hearsay in violation of the confrontation clause; and object to the prosecution's opening statement have no merit. These claims are insubstantial and provide no basis to excuse petitioner's procedural default or grant federal habeas relief.

## H.    FORMULATE A DEFENSE (CLAIM NO. 9)

Besse argues that his trial counsel failed to formulate a defense. Besse claims that he is actually innocent because he lived at the residence and the incident was nothing more than a "domestic dispute."

To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one. See, e.g., Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011).

In this case, counsel actually presented the defense that Besse urges; i.e., that he was innocent because he lived at the residence and was never asked to leave. The factual determination of Besse's guilt or innocence turned largely on the credibility of the witnesses. In Besse's defense, counsel both attacked the credibility of the State's

witnesses and presented Besse's own testimony.  As previously discussed, there is no evidence that any other witnesses were available to testify and that they would have done so in a manner beneficial to the defense.  Counsel therefore cannot be deemed ineffective for relying on the State's inability to support its case, effective defense cross-examination of the State's witnesses and the presentation of Besse's own testimony.  This strategy was successful, to a certain extent, in that the jury found Besse guilty of the lesser offense of criminal trespass as to count one.  The fact that the defense was not successful as to count two, i.e., that Besse was convicted as charged, does not mean that counsel's actions leading to the conviction were deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Strickland, 466 U.S. at 689 (citations omitted).

Besse fails to demonstrate either prong of the Strickland test.  His claim of ineffective assistance of counsel for failing to formulate a defense has no merit.  It neither provides cause for his procedural default nor a substantive basis for federal habeas corpus relief.

I.    FAILURE TO MAKE OPENING STATEMENT AND CLOSING ARGUMENT
(CLAIM NO. 20)

Besse claims that his defense counsel was ineffective for not making an opening statement or closing argument at trial.  He alleges that defense counsel could have told the jury that Besse and Rey were cohabitating.  He does not expound on this argument or indicate how this may have impacted the verdict.  He also does not suggest how he was prejudiced by counsel's failure to avail himself of the opportunity to present an opening statement or a closing argument.

Counsel's decision as to whether to give an opening statement falls with the zone of trial strategy.  See  United States v. Stedman, 69 F.3d 737, 740 (5th Cir. 1995) (ineffective assistance claim based on failure to make opening statement failed because movant did not allege how or why trial would have ended differently but for an opening statement); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (citing Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965)) (whether to make opening statement to jury is a "matter of professional judgment"); see also Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (citations omitted) ("[I]t is well-settled that the decision to waive an opening or closing statement is a commonly accepted strategy, and without more, does not constitute ineffective assistance of counsel."); Huffington v. Nuth, 140 F.3d 572, 573 (4th Cir. 1998) ("Although it may be unusual to waive an opening statement, such a decision is essentially tactical in nature, and not objectively unreasonable."); United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985) ("The timing of an

opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel.").

The record does not reveal the reason for defense counsel's waiver of the opportunity to give an opening statement. However, in Williams, 354 F.2d at 698, as in Besse's case, the evidence against the defendant was strong. As a result, the Fifth Circuit found that waiver of an opening statement "was very likely the wiser course to follow," because "[t]he best hope of defense counsel . . . was to catch the prosecution asleep or lacking evidence at some fatal juncture of the trial." Id. at 703. Thus, "[i]t could well be considered that this was no time for defense counsel, at the very outset, in an opening statement to reveal the weak hand he had to play." Id. The same is true in Besse's case. Given the substantial evidence against him, there was nothing much to which counsel could point that would have created doubt in the jury's mind through an opening statement. As Besse does not provide any evidence that counsel's decision to waive an opening statement was not a strategic one, he has not met his burden of proving deficient performance.

Similarly, the decision to waive closing argument is within the realm of trial strategy. See Sawyer v. Butler, 848 F.2d 582, 592 (5th Cir. 1988) (waiver of closing argument not prejudicial on the facts); Fox, 200 F.3d at 1296 (same); see also United States v. Natanel, 938 F.2d 302, 310 (1st Cir. 1991) (defense counsel's waiver of closing

argument was strategic decision); <u>U.S. ex rel. Turner v. Cuyler</u>, 443 F.Supp. 263, 268 (E.D. Pa. 1977), <u>aff'd</u>, 595 F.2d 1215 (3rd Cir. 1979) (same).  The United States Supreme Court has recognized that "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003).  The Court explained, "[i]ndeed, it might sometimes make sense to forgo closing argument altogether." <u>Id.</u> at 6 (citing <u>Bell v. Cone</u>, 535 U.S. 685, 701-702 (2002)).  As a result, "[j]udicial review of a defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas." <u>Id.</u> "[F]ailure to make a closing argument is not ineffective assistance per se; there must be a reasonable probability that the omission affected the outcome." <u>Nutall v. Greer</u>, 764 F.2d 462, 466 (7th Cir. 1985).

After the State's closing argument,[147] defense counsel waived the opportunity to give a closing argument.[148]  Although the precise reason for counsel's waiver of closing argument is not evident in the state court record, Besse again offers nothing to show that the decision by counsel was not strategic in nature or that the strategy was unreasonable under the circumstances.

---

[147]The State's closing argument was not transcribed and is not included in the trial transcript.  St. Rec. Vol. 3 of 6, Trial Transcript, p. 173, 9/14/10.

[148]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 169, 173.

Besse also has not demonstrated that, had defense counsel given a closing argument, there is a reasonable probability that the outcome of the trial would have been different. The trial was brief, lasting less than four hours.[149] While Besse argues that counsel could have told the jury that Besse was cohabiting with Rey at the time of the incident, the jury was fully apprised of this defense during his testimony when Besse repeatedly testified that he lived at the apartment and had not been asked to leave.[150] That testimony had concluded just 40 minutes before counsel waived closing argument.[151]

The State's case and Besse's defense obviously rested in large part on the credibility of the victim and of Besse. The jury was able to listen to the testimony of the witnesses and view their demeanor. Ultimately, the jury chose to believe the State's witnesses and to disbelieve Besse. Credibility choices of just this kind are entirely within the province of the jury. No reason exists to conclude that defense counsel could have said anything in a closing argument that would have had a reasonable probability of changing the jury's verdict.

Besse has failed to demonstrate that his claims of ineffective assistance of counsel for waiving opening statement and closing argument are substantial. He therefore fails

---

[149]St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/10.

[150]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 145, 146, 148-149, 151-152, 154, 158, 160, 167-168.

[151]Id.

to meet the <u>Martinez</u> exception, the procedural default of his claims is not excused and no basis for substantive federal habeas relief has been established.

J.    <u>FAILURE TO OBJECT TO THE JURY VIEWING PHOTOS DURING DELIBERATIONS (CLAIM NO. 13)</u>

Besse asserts that his trial counsel was ineffective when he failed to object to photographs of Besse and Rey being taken into the jury room during deliberations. He claims the photographs were testimonial in nature and allowing the jury to view them during deliberations violated Louisiana law.

Under La. Code Crim. P. art. 793(A), a jury may request to see photographs received in evidence when the jury needs to examine them to arrive at a verdict. <u>State v. Thibodeaux</u>, 216 So. 3d 73, 86 (La. App. 3d Cir. 2017) (citing <u>State v. Davis</u>, 637 So. 2d 1012, 1025 (La. 1994)). The record reflects that, during deliberations and upon its request, the jury was provided with photographs of Rey and Besse that were admitted into evidence at trial.[152] Louisiana law authorized sending the photographs to the jury upon its request. Besse has provided no legal reason for his counsel to have objected to the photographs being sent to the jury. Again, counsel is not ineffective for failing to assert a meritless objection. <u>Johnson</u>, 306 F.3d at 255; <u>Smith</u>, 907 F.2d 585 n.6; <u>Koch</u>, 907 F.2d at 527. This claim of ineffective assistance of counsel is not substantial and does not excuse Besse's procedural default or provide a basis for federal habeas relief.

_____

[152]<u>Id.</u>, at pp. 88-91, 127-130, 174, 9/14/10.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Kevin T. Besse's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[153]

New Orleans, Louisiana, this _____28th_____ day of June, 2018.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[153]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.